## BALTIMORE & O. R. CO. v. FIDELITY STORAGE CO.

(Court of Appeals of District of Columbia. Submitted October 13, 1924. Decided November 3, 1924. Rehearing Denied November 29, 1924.)

No. 4067.

**I. Railroads ☞338—Last clear chance doctrine held inapplicable.**

Where engineer of train moving at a rate of 50 miles per hour could have stopped train in time to avoid collision with truck approaching crossing at minimum speed of 5 miles per hour, if he had applied emergency brakes when truck was 83 feet from crossing, but could not have avoided accident if he had applied brakes when truck was 70 feet from crossing, submission of case on last clear chance doctrine was error.

**2. Appeal and error ☞927(1)—Testimony taken in light most favorable to plaintiff in determining whether court erred in submitting particular issue.**

Testimony must be taken in the light most favorable to plaintiff in determining whether court erred in submitting case to jury on particular issue.

**3. Railroads ☞327(2)—Truck driver, approaching track, held negligent.**

Driver of truck, approaching crossing with unobstructed view 45 feet from nearest rail in direction from which train came for distance of more than 1,500 feet, held negligent, either in not looking for train or in heedlessly disregarding impending danger.

**4. Railroads ☞327(1)—Pedestrian or vehicle driver must use senses of sight and hearing before crossing tracks.**

Pedestrian or driver of vehicle, before crossing railroad tracks, especially tracks of steam railway, must use his senses of sight and hearing, and keep a lookout for approaching trains.

Robb, Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Suit by the Fidelity Storage Company against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

G. E. Hamilton, J. J. Hamilton, G. E. Hamilton, Jr., Edmund Brady, and Henry R. Gower, all of Washington, D. C., for appellant.

C. H. Merillat, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellee, plaintiff below, sued defendant railroad company to recover damages for the destruction of plaintiff's furniture moving van, mounted on a motor truck. From a verdict and judgment in favor of plaintiff, this appeal was taken.

It appears that the truck was struck by a train of defendant company at a grade crossing of a country road over the defendant's railway tracks in Morgan county, W. Va. The crossing was on the road between Berkeley Springs, W. Va., and Hancock, Md. The accident happened shortly before 7 o'clock in the morning. The truck was driven across the track on the day preceding the accident, and was struck while recrossing the track on its way from Berkeley Springs back to Washington.

At the railway crossing there are four tracks. Proceeding from the Berkeley Springs direction, there is track No. 2 for east-bound passenger service, No. 4 track for east-bound freight service, No. 3 track for west-bound freight service, and track No. 1 for west-bound passenger service. The accident occurred on west-bound track No. 1. The train consisted of an engine, with about 20 express cars and a coach for the train crew. The train was moving at a rate of between 40 and 50 miles an hour.

The approach to the railroad, on the road on which the truck was driven, is level, and at a point 45 feet from the nearest rail of track No 2 there was, at the time of the accident, an unobstructed view to the east (in the direction from which the train came) for a distance of 1,519 feet, at a point 29 feet from the nearest rail of track No. 2, there was an unobstructed view to the east for a distance of 1,788 feet, and at the first rail of track No. 2 there was an unobstructed view east for a distance of 2,154 feet. The distance from the first rail of track No. 2 to the first rail of track No. 1, the track on which the train was running, was 38 feet 3 inches. The truck, according to the testimony of plaintiff's witnesses, was approaching the track at the rate of 5 or 6 miles per hour.

The testimony of the conductor discloses that the train was composed of 19 express cars and 1 coach for the train crew. They were express cars, not freight cars. The testimony shows that the length of an express car varies from 40 to 70 feet, and that the train was stopped within 25 car lengths. There is testimony, however, to the effect that a train of this size, moving at the speed here accorded, can be stopped within a distance of about 20 car lengths. Assuming, therefore, that the cars were of the minimum length, 40 feet, and the train could be stopped in 20 car lengths, the minimum distance within which this train could have been stopped was 800 feet.

[1, 2] On this state of facts, we think the court erred in submitting the case to the

jury on the doctrine of last clear chance. It will be observed that, resolving the testimony in its strongest light in favor of plaintiff, which must be done in view of the finding of the jury, the train was moving at the utmost at a rate of 50 miles per hour, while the minimum speed of the truck was 5 miles per hour. At this rate the train was moving 10 times as fast as the truck. It follows that, when the truck was 45 feet away from the nearest rail of track No. 2, or 83 feet 3 inches from the nearest rail of track No. 1, on which the accident occurred, there was an unobstructed view of track No. 1 for distance of 1,519 feet. At that moment the train was 832½ feet from the crossing. When defendant's employees entered upon track No. 2 at a distance of 38 feet 3 inches from the crossing of track No. 1, they had an unobstructed view of track No. 1 for a distance of 2,154 feet. The train was then 382½ feet from the crossing where the accident occurred. The minimum distance, as we have observed, within which the train could be stopped by the application of emergency breaks, was 800 feet.

Assuming, therefore, that the engineer, in the performance of his duty, saw or ought to have seen the truck approaching, he could have stopped his train in time to avoid the accident, had he applied the brakes when the truck was 83 feet 3 inches from the crossing. Had he applied them at a point when the truck was 70 feet from the crossing, he would have been unable to avoid the accident. The question involved, therefore, is whether an engineer operating a train on a steam railroad is required, under these circumstances, to stop his train in order to allow an automobile to cross the tracks, on the assumption that the driver of the automobile will not stop, but will recklessly enter the tracks ahead of the train.

[3, 4] Clearly this is not the law. Assuming negligence on the part of the engineer, as contended by counsel for plaintiff (and there is evidence tending to establish that the engineer failed to blow the whistle or ring the bell at a point near the crossing, and that the crossing bells were not ringing at the time the driver of the truck entered the tracks), we think the driver of the truck was still guilty of contributory negligence either in not keeping a lookout for the approaching train, or in heedlessly disregarding the impending danger. It is the duty of a pedestrian or a driver of a vehicle, before entering upon railway tracks, especially the tracks of a steam railway, to use his senses of sight and hearing and keep a look-

out for approaching trains. Wabash Ry. Co. v. Huelsmann (C. C. A.) 290 F. 165.

The testimony by plaintiff's two employees, in charge of the truck, to the effect that, before driving onto the tracks, one of them went ahead and looked, and did not hear or see a train approaching, in the circumstances, is not important, since the duty of keeping a lookout by the driver continues until the danger zone is reached—in this case, within the short distance from track No. 1, where the truck could have been stopped, and thus avoided the accident. As this court said in Glaria v. Washington Southern Railway Co., 30 App. D. C. 559, 566: "It is true that, where the undoubted facts and circumstances in evidence clearly show that one about to cross a railway track must inevitably have seen a coming car or train if he had actually looked in its direction, the testimony of the injured party that he looked and failed to see it coming may be rejected, and his contributory negligence declared as matter of law notwithstanding."

An engineer operating a heavy railway train is not required to assume that an auto truck approaching the track at a rate of 5 or 6 miles per hour, at a distance from the track on which the train is moving of 83 feet, or 70 feet, or even 38 feet, will recklessly continue its course in front of the approaching train. In other words, he is not required to anticipate the negligence of a traveler approaching the tracks. Illinois Cent. R. Co. v. Ackerman, 144 F. 959, 76 C. C. A. 13. Under such circumstances, an engineer is not required to stop his train, or to take steps towards stopping it. "It would constitute a serious embarrassment to traffic, if engineers should be required to stop or slow up upon seeing the approach of a wagon to the tracks. They have a right to presume that the drivers will observe the precaution which the law imposes upon them as a duty, and keep off the tracks on the approach of trains." St. Louis & S. F. R. Co. v. Summers, 173 F. 358, 360, 97 C. C. A. 328, 330.

Before the doctrine of last clear chance can be invoked, the danger must be apparent, such as to justify the assumption that injury will result unless the train is stopped. In addition there must exist the time and opportunity within which, by the exercise of reasonable care, the engineer may stop his train, and thus avoid the infliction of injury. Applying this rule to the present case, there is no reason for the application of last clear chance. A truck moving at 5 or 6 miles an hour can be stopped within the dis-

tance of a few feet, and the engineer had the right to assume that the truck in this instance would be stopped before entering upon the track on which the train was running. He had the right to assume that the operators of the truck had fulfilled the obligations imposed upon them of looking and listening for the approaching train; that, in view of the opportunities afforded of seeing the approaching train, they had seen it, and therefore would not blindly drive upon the track.

There is a reciprocal duty in these cases, resting alike upon the traveler on the highway and the engineer operating the train. While the engineer is required at crossings to keep a lookout for approaching vehicles, the operators of vehicles and pedestrians are likewise required to keep a lookout for approaching trains, and each has the right to assume that the other has fulfilled this obligation. "The law does not impose upon an engineer the duty to stop or slacken the speed of his train upon seeing a traveler upon the highway approaching a grade crossing; he may properly assume that the traveler will not at that time attempt to cross the track." Gannett v. B. & M. Co., 238 Mass. 125, 130 N. E. 183.

There was some testimony, by witnesses for the plaintiff to the effect that the view along the track at the time of the accident, was obstructed by a fog. The majority of the witnesses testified that while it had been foggy earlier in the morning, at the time the accident occurred, it had lifted and was clear. Assuming, however, that the track was overhung by a fog which obstructed the view, this would tend to minimize the duty imposed upon the engineer, inasmuch as he was only required to guard against objects on the track, or approaching the track, which could be seen from his position on the engine. It would, however, tend to emphasize the obligation resting upon the operators of the truck, since they would be charged with the duty of not only looking and listening for an approaching train, but of exercising the utmost care, in view of the unfavorable weather conditions, before entering the danger zone. In any event this could not affect the application of the rule of last clear chance, since it rests wholly upon the ability of the engineer, in the exercise of reasonable care, to have seen the danger in time to have avoided the accident. The obligation, therefore, could not arise until he came in sight of the object on or near the track, irrespective of weather conditions.

Plaintiff's employees were so clearly guilty of contributory negligence that there is no theory upon which recovery could be sustained on the facts here presented. The prayer for a directed verdict should have been granted.

The judgment is reversed, and the cause remanded for a new trial.

ROBB, Associate Justice (dissenting). This accident occurred, according to the evidence, at a much-traveled public highway, near Berkeley Springs, W. Va., and under section 2971 of the laws of that state each locomotive engine is required to be equipped with a bell or steam whistle, "which shall be rung or whistled by the engineer or fireman, at the distance of at least 60 rods from the place where the railroad crosses any public street or highway, and be kept ringing or whistling for a time sufficient to give due notice of the approach of such train before such street or highway is reached." Failure to comply with this requirement has been declared by the courts of West Virginia to constitute negligence.

According to the testimony of the two men who were on the truck, the morning was foggy and they stopped their car before attempting to cross the tracks. They looked and listened, and, not seeing the approaching train and hearing no bell or whistle (neither of which they say was sounded), started across the tracks and were struck by the on-coming train. A farmer, an entirely disinterested witness, who was working in a field near the crossing, gave positive testimony to the effect that no bell or whistle sounded.

The evidence on behalf of the railroad company tended to show that it was not foggy and that the driver of the truck could have seen the train when it was 2,100 feet from the crossing. Of course, if the driver could have seen the engine at that distance, so could the engineer have seen the truck 2,100 feet from where the train struck it. It is undisputed that the engineer did not see the truck, and did not even know it was attempting to cross the tracks until after the train struck it; and yet this court, usurping the functions of the jury, says in effect that there was no negligence on the part of the engineer. If the jury accepted the testimony of the plaintiff, as I submit it had a right to do, the cause of the accident was the failure of the engineer to obey the humane law of West Virginia by failing to give timely warning of the approach of

this express train. On the other hand, if the jury accepted the testimony of the witnesses for the railroad company, it still was justified in finding, as it evidently did, that, had the engineer kept a lookout, as he was in duty bound to do, he would have discovered the peril of the driver of this truck in time to have slackened the speed of the train and averted the accident. But the engineer did neither.

The charge of the court was eminently fair, and, in my view, contained a correct exposition of the law applicable to the case. Among other things, the court said: "Now, the duties at that crossing at the time were reciprocal on both parties. Each of them had a right to go there. This truck driver had a right to cross there. The engineer had a right to drive his train up there. The duties were reciprocal. The duty of the railroad company was to keep a lookout, to give a timely and sufficient warning, and if, after they discovered, or by the exercise of reasonable diligence should have discovered, a man or a truck in a place of danger, to use every reasonable effort to avoid a collision." This court, however, now says that an engineer may close his eyes on approaching a much-traveled public crossing, and, if he hits, maims, or kills one attempting to cross, the railroad company in no event will be liable. Such a doctrine needlessly places human life in jeopardy, and, in my view, is an incorrect statement of the law.

I dissent.