## SMALL v. PENNSYLVANIA R. CO.
### No. 6363.

United States Court of Appeals for the District of Columbia.

Argued Oct. 11, 1935.

Decided Dec. 2, 1935.

James C. Wilkes and James E. Artis, both of Washington, D. C., for appellant.

Frederic D. McKenney, John S. Flannery, and G. Bowdoin Craighill, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

Appellant, Clarence H. Small, administrator, brought suit in the Supreme Court of the District of Columbia against defendant, Pennsylvania Railroad Company, to recover damages for the death of his

wife caused by injuries sustained by her while riding as a passenger in an automobile coach operated by her sister-in-law. The accident occurred on a highway about 2 miles north of Frederick, Md., at about 10 o'clock in the morning of March 3, 1932.

The evidence discloses that the car was being driven northward along the highway at about 30 miles an hour; and the locomotive drawing three cars, which had just stopped, or nearly so, at Harmony Grove Station, situated about 200 feet northeast of the highway, was moving at a speed of 4 or 5 miles an hour in a southwesterly direction across the highway when the collision occurred.

Plaintiff, in his declaration, charges defendant company with negligence in that due and timely warning of the approach of the locomotive and cars toward the highway was not given by blowing the whistle of the locomotive, when it started from the station and approached the intersection; that the stationary gong at the crossing did not ring, or, if it did, not loud enough to warn persons on the highway of the approach of the train, and that the railroad company was negligent in not keeping a guard or flagman at the crossing, and an electric signaling device to warn and prevent persons from driving on the railroad crossing when a train or engine was approaching the highway.

Defendant's plea amounted to a denial of these specific allegations of negligence, with an affirmative defense of contributory negligence on the part "of the driver of the automobile in driving at a fast and reckless speed, and in failing to keep a proper lookout, and also by the failure of Mrs. Small herself to observe the danger at the crossing and to warn the driver thereof."

It is uncontradicted that three warning signs could be seen by motorists approaching the crossing from the south: (1) A reflector sign on the east or right side of the highway about 400 feet from the crossing with the words "Danger—R. R." thereon; (2) white cross-marks with letters "R. R." 4 feet high painted on the pavement of the roadway about 400 feet from the crossing; and (3) a large cross-arm sign on the east side of the highway, about 50 feet from the crossing, with large lettering thereon, "Railroad Crossing— Look Out for the Locomotive."

It is alleged by the defendant, on which there is some conflict of evidence, that three warnings were given which could be heard by motorists approaching the crossing: (1) Seven or eight blasts of the engine whistle; (2) the engine bell which was ringing as the train approached the crossing and continued to ring until after the collision; (3) the crossing gong which began to ring automatically when the train was about a half mile from the crossing and continued to ring until after the collision.

From a directed verdict for the defendant, this appeal was taken.

It appears that when the case was submitted to the jury the court had given instructions that if they had not arrived at a verdict by 11 o'clock p. m. they should be permitted to separate. At that time the jury, not having agreed, were permitted to separate. They returned to the courtroom in the morning, and were called into the jury box and asked by the clerk if they had agreed upon a verdict. The foreman announced a disagreement. After considerable argument upon the renewed motion of counsel for defendant for a directed verdict, the court sustained the motion and directed the verdict.

 It is urged that the jury, having been permitted to separate under the circumstances, was discharged from further jurisdiction in the case, and that a new trial should have been ordered. The court, however, specifically stated that "they were allowed to go and told to return in the morning. I thought you understood that. * * * The fact is that they were instructed to return." We think that no error was committed in this proceeding. "While it is more regular to give the jury binding instructions before sending them out, according to some authorities, verdict may be directed, if warranted by the evidence, at any stage of the trial before a verdict is actually received by the court and recorded, unless the submission to the jury of itself has operated to deprive the unsuccessful party of some right formerly available in his behalf; thus it has been held that the court may call back a jury, while they are deliberating, and direct a verdict; and a direction, of itself proper, may properly be given, after the court has submitted the case to the jury, when they, after deliberation, are unable to agree, when it is discovered that they are about

to render a verdict contrary to law, or even when they return into the court room and announce such a finding, at any time before the court receives the verdict as that of the jury." 64 C.J. 502, and cases cited.

In the present case the mere inquiry as to whether the jury had agreed did not amount to the receiving of a verdict, and the court retained full jurisdiction of the case to dispose of it as he deemed proper until a verdict was received and recorded or the jury discharged. In this case the verdict returned by the jury was by the direction of the court. It was so recorded, and the jury discharged. There was nothing irregular or erroneous in this proceeding.

With the general rule in view of the nonliability of a mere passenger in an automobile for the contributory negligence of the driver, this case must turn chiefly upon the negligence or lack of negligence of the defendant railroad company; and it was upon the failure to establish the negligence of defendant that the court below directed a verdict.

This accident occurred in the state of Maryland. It has been held in that state that in the absence of any action having been taken by the county commissioners under the statute to require the railroad company to maintain at a particular crossing a flagman, electric alarm bells, or safety gates, the omission of the railroad company to maintain such flagman, electric alarm bells, or safety gates does not constitute actionable negligence. Northern Central R. Co. v. Medairy, 86 Md. 168, 37 A. 796; Pennsylvania R. Co. v. Yingling, 148 Md. 169, 176, 129 A. 36, 41 A.L.R. 398. This charge of negligence, however, on the part of the railroad company seems to have been abandoned, and properly so, by the plaintiff, inasmuch as no evidence was offered in support of the averments of the declaration.

■ We think it unnecessary to consider in detail the voluminous evidence submitted in this case. The direction of a verdict by the court below in favor of the defendant was right. The evidence is uncontradicted that the signs along the highway were in place and in full view as the automobile approached the railway tracks. These constituted a warning that a railway crossing was ahead. This was a warning of which the driver of the automobile was required to take cognizance. This imposed upon her the duty to "look and listen." Northern P. R. Co. v. Freeman, 174 U.S. 379, 19 S.Ct. 763, 43 L.Ed. 1014; Baltimore & O. R. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, 56 A. L.R. 645; Pennsylvania R. Co. v. Yingling, 148 Md. 169, 129 A. 36, 40, 41 A.L.R. 398; Baltimore & O. R. Co. v. Fidelity Storage Co., 55 App.D.C. 92, 2 F.(2d) 310.

In the Yingling Case the court said: "The recognized rule in this state is that it is negligence per se for any person to attempt to cross tracks of a railroad without first looking and listening for approaching trains, and that this duty continues until the tracks are reached. If the view of the track is not fully in view in both directions, in the immediate approach to the crossing due care would require that the party intending to cross the railroad tracks should stop, look, and listen before attempting to cross."

■ While we think that the placing of the absolute restriction upon the driver of a vehicle or pedestrian to stop as well as to look and listen, before entering upon a railroad track, to avoid the charge of contributory negligence goes too far, yet there is undoubtedly a duty upon the driver of a vehicle approaching a railroad track to keep his vehicle so under control that if, upon exercising the duty of looking and listening, due care for his safety would, under the circumstances, require him, as a prudent person, also to stop, he will be able to stop. And if under such circumstances he does not stop, he will be guilty of negligence. "As a person approaches a railroad crossing in a vehicle he must reduce his speed to a limit which is reasonably safe under the circumstances and conditions and then proceed cautiously and carefully with the vehicle under complete control; and he must employ his senses of hearing and sight to avoid danger." Schrader v. New York, C. & St. L. R. Co., 254 N.Y. 148, 172 N.E. 272, 273.

■ The evidence as found by the court below, and properly so, is practically undisputed that whistles were being blown from the engine when the train approached the highway. While there is some difference between the witnesses as to just how many whistles were blown, and as to when they were blown, the evidence is undisputed that whistles were blown before the train reached the Harmony Grove Station, where it either stopped or almost stopped, and the great preponderance of

the evidence is that the whistle was blown one or more times after leaving the station before reaching the railway crossing, which was a distance of only about 200 feet.

The testimony of the witnesses introduced, with a view of contradicting this evidence, as to just when and where the whistles were blown was not directly contradictory, but of a negative character. The witnesses merely testified that they had not noticed or heard the whistles blow. This testimony does not amount to an absolute rebuttal of the positive testimony of the great majority of the witnesses as to when and where the whistles were blown. The same may be said in general as to the ringing of the bell on the engine. Klein v. United Railways & Electric Co., 152 Md. 492, 137 A. 306. For a similar reason, it was not error to exclude the evidence of another witness to the effect that on a previous occasion he crossed the tracks and did not hear the crossing gong.

Under similar circumstances to those here involved, the court, in Strider v. Pennsylvania R. Co. (C.C.A.) 60 F.(2d) 237, 239, said: "The point principally urged by the defendant is that there was a total lack of substantial evidence to show negligence. The plaintiff called two witnesses, one of whom testified that she did not hear the whistle but did hear the bell. She was standing some 50 feet from the crossing and facing away from it, and there was nothing to indicate that she was listening for a crossing whistle or other warning. The other witness had stopped his automobile at the crossing to permit a north-bound freight train to pass, after which he crossed in safety, and he too testified that he did not hear the whistle, 'but did not say there wasn't any blown.' Having already crossed the tracks, presumably this witness also was no longer listening or waiting for such a warning. The testimony of both of these witnesses was purely negative, merely affording possible ground for an inference that the whistle had not been blown, but which, as we said in American Oil Co. v. Frederick, Adm'x, 47 F.(2d) 54, 56 (C.C.A.6), 'lost its substantial character, if any it had, when the defendant's evidence was presented.'"

The evidence is also practically uncontradicted that the crossing bell located beside the tracks and on the highway was ringing from the time that the train entered the zone, and continued to ring after the accident as long as the train remained

within the zone. The chief witness relied upon by the plaintiff to contradict this evidence was a person who testified he had been accustomed to travel the road twice a day for a long period of time, and that he could not hear the bell ring when approaching the track in the direction plaintiff's decedent was traveling. This evidence is of little or no importance, since it relates entirely to times different from that at which the accident occurred, and not to the condition of the bell at the time of the collision. Contradicting this evidence is the testimony of many witnesses that at quite a distance removed, some within their houses, they distinctly heard the alarm bell ringing as this train approached. The testimony of this witness was so completely discredited that it cannot be held sufficient to raise an issue of fact for the consideration of the jury.

Error is assigned in the rejection of plaintiff's offer to prove the details of an accident which occurred at this railway crossing in 1921, eleven years prior to the date of the accident under consideration. Evidence as to prior accidents is admissible only for the purpose of charging the defendant with notice of defects or physical conditions which are dangerous. District of Columbia v. Armes, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618; Capital Traction Co. v. Copland, 47 App.D.C. 152. The principle announced in those cases related solely to the question of notice. In the Armes Case, the injury resulted from a defect in a sidewalk, and evidence was admitted of injuries previously sustained by others at the same place, which was held to give the District notice of the defect. In the Copland Case, where a passenger was injured on a street car by a trolley pole which stood too close to the track, evidence that others had been injured by the trolley poles thus located, was held to be notice to the traction company of the dangerous proximity of the poles to the tracks.

But these cases are easily distinguished from the present case, where it was attempted to show that defendant's train crew was negligent in 1921 in order to establish the negligence of the crew in 1932. Where the prior evidence of negligence by one person is offered for the purpose of proving the negligent act of another, it is inadmissible. Fountaine v. Washington Ry. & E. Co., 42 App.D.C. 295. In other words: "Where the sole charge is that an

employee was negligent on a particular occasion, it is irrelevant to prove that he, or some other employee, had been negligent on other occasions." Robinson v. Denver Tramway Co. (C.C.A.) 164 F. 174, 176.

It conclusively appears that the automobile collided with the side of the engine when the engine was crossing the highway. It therefore appears that the proximate cause of the collision was not due to any failure on the part of the defendant to blow the engine whistle or to ring the bell on approaching the crossing, but to the reckless disregard of the warnings on the highway and at the crossing and propelling the automobile into the side of the moving engine. As was said in the case of Southern R. Co. v. Walters, 284 U.S. 190, 52 S.Ct. 58, 59, 76 L.Ed. 239, "There is no proof whatever that the alleged failure to stop before entering the crossing was the proximate cause of the plaintiff's injury. Such direct testimony as there is on his behalf indicates a collision between him and the side of the train after the front part of it, which in this case was the rear end of the tender, had passed him; and all of the evidence both for plaintiff and for defendant is consistent with this view of what happened. It is clear that on this ground also a binding direction in favor of the defendant should have been given."

It may be here suggested that in the modern method of highway travel by automobile a much greater responsibility is placed upon the traveling public in approaching railway crossings than was the case in the horse-and-buggy days. In the slow method of travel of those days, a railroad whistle blown at a long distance from the crossing would have been sufficient to give warning to an approaching driver of a vehicle; but at the speed with which travel is now conducted by automobile, in this case traveling at the rate of 30 miles per hour, a signal given, for example, a minute before the crossing is reached by a slow-moving train, in this instance traveling at a rate of 4 or 5 miles an hour, would be but a short distance from the crossing, while the automobile was still half a mile from the crossing, and the driver thereof and passengers might well experience difficulty in hearing the signals. Under these circumstances, it is much more difficult for a railway company, by the use of engine signals, to guard against approaching vehicles than

in former times. The responsibility, therefore, of the driver of an automobile approaching a railway track to stop, look, and listen is greatly increased by the present conditions of travel.

The judgment is affirmed with costs.