**NORTHERN PAC. RY. CO. v. BACON.***

No. 8328.

Circuit Court of Appeals, Ninth Circuit.

July 2, 1937.

Rehearing Denied July 26, 1937.

*Writ of certiorari denied 58 S.Ct. 55, 82 L.Ed. —.

Walker & Walker, of Butte, Mont., and Gunn, Rasch & Hall, of Helena, Mont., for appellant.

H. L. Maury and A. G. Shone, both of Butte, Mont., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

Appellee, a citizen of Montana, brought this action against appellant, a Wisconsin corporation, to recover damages alleged to have been caused by appellant's negligence.

The complaint is in two counts. The first is for $20,250 on account of personal injuries alleged to have been suffered by appellee in a grade-crossing collision. The second is for $1,425 on account of damage alleged to have been caused to appellee's automobile in the same collision. The jury returned a verdict in appellee's favor for $9,000 on the first count and for $394 on the second. Judgment was entered accordingly. This appeal followed.

The facts are, for the most part, not in dispute. Undisputed facts are as follows:

Appellant owns and operates a double track railroad which crosses a public highway at a point about 6 miles from Butte, in Silver Bow county, Mont. The railroad at that point runs approximately north and south. The highway runs approximately east and west, but just beyond the crossing, going east, it curves rather sharply to the north. It is a "black top" oiled highway. A short distance north of the crossing, a "Y," where trains are turned round, is connected by a switch with the west track of appellant's railroad.

Appellant maintains at this crossing automatic signals consisting of two electrically driven wig-wags and an electric bell. The wig-wags are swinging discs suspended over the south edge of the highway about 20 feet from the ground. Each is suspended from the end of a beam projecting horizontally from the upper end of a post. One such post stands about 15 feet east of the east track and the other about 15 feet west of the west track of appellant's railroad. Both are on the south side of and about 3 feet distant from the highway. The post standing east of the east track has attached to it, about 6 feet from the ground, the bell just referred to. It and the wig-wags are so constructed and connected with appellant's tracks that when an engine, or car or train of cars on either track comes within 1,000 feet of the crossing, the bell begins to ring and the wig-wags begin to swing with a pendulum-like motion, each displaying in its center a red light. This continues until the rear wheels of the last car have passed 6 feet beyond the crossing. These automatic signals were maintained by appellant, in good order, continuously, for more than a year next preceding October 23, 1935.

On the evening of October 23, 1935, by direction of appellant, a train of seven passenger cars, drawn by a switch engine and manned by a switching crew, was turned round on the "Y" mentioned above and was backed from the "Y" onto the west track of appellant's railroad. Being then headed south, the train proceeded in that direction until the last car had cleared the switch connecting the "Y" with the west track. The train was then stopped to permit a member of the crew to get off, "line up" the switch, and get back on the train. When so stopped, the engine and first car of the train had passed over and were south of the crossing, but the second car was on the crossing, completely blocking it. This occurred about 10:25 o'clock p. m. These passenger cars were of the usual color—black, or practically so. Having no passengers aboard, the cars were not lighted. That is to say, they had no lights inside them. The engine and rear end of the train were properly lighted.

After the train was stopped and while it was standing at the place indicated, appellee, traveling west on the highway, drove his automobile into and against the side of the second car of the train and thereby sustained the injuries to his person and automobile for which recovery is sought in this action.

As to the cause or causes of the collision, the parties disagree. The complaint alleges that appellant was negligent (1) in placing across the highway "a dark and entirely unlighted train of black cars"; (2) in permitting the train to stand on the highway for more than fifteen minutes continuously; (3) in failing "to continuously sound the whistle of the engine attached to the said train, and within one hundred feet of the said crossing"; (4) in permitting the automatic signals above described to be out of order while the train was on the crossing; and (5) in failing, while knowing that the automatic signals were out of order, to place a servant or a light or other signal at or near the crossing to warn travelers on the highway, including appellee, of the dangerous condition then and there existing; and alleges that these negligent acts caused the collision.

Appellant's answer denies that it was negligent in any respect, or that the collision was caused by its negligence or by any of the acts complained of by appellee. As a further defense, the answer alleges that appellee was guilty of contributory negligence, in that, in approaching the crossing, he carelessly and negligently failed to look for cars on appellant's railroad,

carelessly and negligently failed to take any precautions to ascertain whether such cars were passing over or standing on the crossing, and carelessly and negligently ran his automobile at an excessive and dangerous rate of speed and at such a rate of speed that he could not stop it within the distance he could see ahead, and that the damage and injuries complained of by appellee were caused by his contributory negligence, as aforesaid.

At the close of all the evidence, appellant moved the court for a directed verdict in its favor, on the ground that appellee had failed to prove any of the acts of negligence charged in the complaint, and on the further ground that the evidence showed that appellee was guilty of contributory negligence, as alleged in the answer. The motion was denied. This ruling was excepted to and is assigned as error.

We consider first the several acts of alleged negligence charged in the complaint.

■ 1. There was no evidence that appellant placed "a dark and entirely unlighted train of black cars" across the highway. The train in question carried front and rear lights, as stated above. The fact that the cars were black and had no lights inside them furnishes no basis for a charge of negligence. Passenger cars are usually black and, when unoccupied, as in this case, are usually unlighted. Lights inside such cars are provided for the use of passengers and trainmen, not for the benefit of travelers on public highways. The claim that appellant owed appellee a duty in this regard is obviously unfounded. Compare Orton v. Pennsylvania R. R. Co. (C.C.A.6) 7 F.(2d) 36, 37.

2. There was no evidence that the train or any part of it stood on the crossing for more than fifteen minutes, or for more than one minute, before the collision occurred. It did thereafter, because of the collision, remain there for more than fifteen minutes, but that, of course, is immaterial. Whether negligent or not, what was done after the collision cannot be regarded as its proximate cause.

■ 3. There was no evidence that the whistle of appellant's engine was not continuously sounded while approaching the crossing and within 100 feet thereof. Appellant was under no statutory or other duty to continue sounding the whistle after the engine had passed the crossing. No such duty was imposed by section 6521 of the Revised Codes of Montana 1935, cited by appellee. By that section appellant was required to sound its whistle from a point between 50 and 80 rods from the crossing until the crossing was reached, but not thereafter. Appellee concedes that section 6521 was not violated. Furthermore, even if negligent, failure to sound the whistle was not the proximate cause of the collision. Compare Small v. Pennsylvania R. R. Co., 65 App.D.C. 112, 80 F.(2d) 704, 708.

■ 4. There was no direct proof that the automatic signals were at any time out of order. There was, however, some testimony that they were not functioning at the time of the collision. From this testimony, though contradicted by that of other witnesses, the jury might have inferred that the signals were out of order when the collision occurred, but there was no evidence that appellant knew they were out of order. It was shown by uncontradicted evidence that the signals had been inspected daily and no defect found in them, and that they were in good order and functioning properly a few hours before and a few hours after the collision. Their mere failure to function—if indeed there was any such failure—at the time of the collision was not evidence of negligence on the part of appellant. Southern Pacific Co. v. Kauffman (C.C.A.9) 50 F.(2d) 159, 162.

■ 5. There was no evidence that appellant failed, while knowing that the automatic signals were out of order, to place a servant or a light or other signal at or near the crossing to warn or notify travelers on the highway of the dangerous condition then and there existing. There being no evidence of such knowledge, there was, of course, no evidence of such failure. It cannot be said that, in the absence of such knowledge, it was appellant's duty to take the precautions indicated. Compare Walton v. Oregon Short Line R. R. Co. (C.C.A.9) 50 F.(2d) 352, 353.

■ Thus, we conclude, the evidence does not establish or tend to establish that the collision was caused by appellant's negligence. It does establish, without conflict and beyond question, that appellee's own negligence caused the collision.

There was uncontradicted evidence that, in daytime, by actual measurement, a railroad train or car standing on the

crossing could be seen by the driver of an automobile from a point 350 feet east of the crossing. Appellee himself testified that he was acquainted with the crossing and had been for 25 or 30 years; that he had traveled that part of the highway hundreds of times; that the wig-wags could be distinctly seen from a point on the highway 300 or 400 yards east of the crossing; that between this point and the crossing, the highway was practically level; that from this point to the crossing appellee drove his automobile, on the night of the collision, at a speed of not more than 15 miles per hour; that his automobile was in "fine condition"; that his brakes were "all right and first class"; that he had "the best headlights that could be made"; that they "would throw a ray of light 200 feet or more"; and that traveling, as he was, at a speed of 12 or 15 miles an hour, he could stop his automobile within a distance of 8 or 10 feet; but that he did not see the train or the car with which he collided until he was within 4 or 5 feet of it, and could not then stop in time to avoid the collision.

The conclusion is inescapable that appellee did not see the car sooner because he did not look sooner; that if he had looked when he should have looked, he could have seen the car and could have stopped his automobile in time to avoid the collision; that, in failing to do so, he was guilty of gross negligence; and that his negligence, not appellant's, was the proximate cause of the collision. Southern Ry. Co. v. Walters, 284 U.S. 190, 194, 52 S.Ct. 58, 76 L.Ed. 239; Small v. Pennsylvania R. R. Co., supra; Brown v. Southern Ry. Co. (C.C.A.5) 61 F.(2d) 399, 400; Sisson v. Southern Ry. Co., 62 App.D.C. 356, 68 F. (2d) 403, 406.

Even if it could be said that appellant was negligent, and that its negligence, concurring with that of appellee, caused the collision, still appellee, being guilty of contributory negligence, could not recover. Calloway v. Pennsylvania R. R. Co. (C.C.A.4) 62 F.(2d) 27, 28.

Appellee's excuse for not seeing the car sooner is that the car was black and the highway was black, and that their blackness so blended with the darkness of the night as to prevent his seeing the car until it was too late to avoid a collision. The evidence forbids acceptance of this excuse. Appellee's witness Granath, traveling east on the same black highway, arrived at the crossing a few minutes after the collision. He testified that, as he approached the crossing, he could and did, from a distance of 100 feet, see the car with which appellee had collided. Granath's opportunity for seeing was no better than appellee's. We quote Granath's testimony:

". . . I saw there was a coach [railroad passenger car] on the crossing. I was perhaps 100 feet to the crossing when I saw this coach and I saw it then from the lights of my [automobile]. I did not run into the car. I think I was driving between 10 and 15 miles an hour . . . and I figure as I got to 100 feet of the coach I then saw it from the rays of my own headlights. I got approximately 25 feet to the car before I stopped. . . . The car blocked the crossing and I could not go on so I then got out and went between the two coaches to see what was the matter."

This testimony shows that, despite the darkness of the night and the blackness of the car and of the highway, the car could have been seen by appellee, as it was by Granath, in time to avoid a collision.

Appellant's motion for a directed verdict should have been granted.

Judgment reversed.