Pearl L. EMBRY, Appellant,

v.

SEARS, ROEBUCK & COMPANY, a corporation, Appellee.

No. 2202.

Municipal Court of Appeals for the District of Columbia.

Argued June 16, 1958.

Decided Oct. 2, 1958.

3. Cf. Kernick v. United States, 8 Cir., 1957, 242 F.2d 818.

4. Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145.

John Geyer Tausig, Washington, D. C., with whom H. Max Ammerman, Washington, D. C., was on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellant was a customer in one of appellee's stores and while there she fell and was injured. She sued for damages and the case was submitted to a jury which failed to agree on a verdict. When the jury reported its inability to reach an agreement, the appellee renewed its motion for a directed verdict. The motion was granted and this appeal followed.

Appellant questions the propriety of directing a verdict after submission of the case to the jury. Such procedure was neither irregular nor erroneous.[1] However, the failure of the jury to agree is entitled to no consideration in reviewing the grant of the directed verdict. The direction of a verdict was a legal ruling that the evidence viewed most favorably to appellant would not furnish support for a finding by the jury that appellant's injury was caused by the appellee's negligence. The principal question here is whether that ruling was correct.

Appellant, a woman of mature years, was in the store for the purpose of purchasing some household articles. She selected certain articles and then proceeded down an aisle in search of another article, and in doing so passed by a cashier's booth and a low platform on which a charcoal grill was displayed. The booth and the platform were separated by an aisle which intersected the one on which she was walking. Having failed to find the last article she was looking for, she retraced her steps down the same aisle to return to the cashier's booth to pay for the articles she had selected. In turning into the intersect-

Harry E. Taylor, Jr., Washington, D. C., with whom Richard V. Waldron, Washington, D. C., was on the brief, for appellant.

---

1. Small v. Pennsylvania R. Co., 65 App.D.C. 112, 80 F.2d 704, certiorari denied 297 U.S. 724, 56 S.Ct. 669, 80 L.Ed. 1008.

ing aisle to reach the cashier's booth she hooked her foot under the corner of the display platform and was caused to fall.

The theory of appellant's case was that the low platform with its projecting corner was placed so close to the cashier's booth as to create a hazard to customers approaching the booth. The platform was approximately four feet square and five inches high. Its sides were not flush with the edge of the top surface but were indented some three or four inches, leaving a projecting ledge around the platform. As the platform formed the corner of the main and intersecting aisles, one turning from the main aisle to the intersecting aisle had to pass the projecting corner of the platform, and it was under this corner that appellant's foot was caught.

 It may be preliminarily noted that this is not a case of an obstruction or projection in the aisle; and there is no claim here that the aisle was improperly lighted or that the floor and platform were of such similar color as not to be easily distinguishable. The claim here, as we have stated before, is that the platform with its projecting corner was so close to the cashier's booth that it had constituted a hazard to a customer approaching the booth. Although the close proximity of the platform to the booth was a main issue, strangely enough there was no testimony by either appellant or appellee concerning the exact width of the aisle separating the booth from the platform. The testimony of the various witnesses, all concededly approximations, ranged from 12 to 36 inches. A photograph introduced in evidence shows these extremes to be obviously incorrect and indicates that the aisle was possibly 18 or 20 inches wide, and clearly shows that it was considerably narrower than the aisle it intersected.

Both parties have cited many cases dealing with somewhat similar situations, but they furnish little aid in deciding this particular case. We approach the case with two principles in mind: (1) a storekeeper owes his customers the duty of keeping the premises in a reasonably safe condition; (2) the issue of negligence is a factual one unless the evidence is such that fair-minded men can draw only one conclusion from it.

Guided by those two principles, we rule that in view of the comparative narrowness of the aisle and the close proximity to the floor of the protruding platform corner, the questions of the store's negligence and the customer's contributory negligence were jury questions, and it was error to direct a verdict.

Reversed with instructions to grant a new trial.