Trenton C. THOMAS, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CF–1790.

District of Columbia Court of Appeals.

Argued April 28, 1998.

Decided July 30, 1998.

---

Kenneth H. Rosenau, Washington, DC, appointed by this court, for appellant.

Michael W. Wright, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Albert A. Herring, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and REID, Associate Judges, and MACK, Senior Judge.

---

PER CURIAM:

■ Trenton C. Thomas was convicted by a jury of unlawful possession of cocaine[1] and of several weapons offenses.[2] The prosecution of Thomas was initiated after police recovered from the trunk of Thomas' automobile a machine gun, ammunition, and a battery cable bag containing crack cocaine with a street value of approximately $6700. On appeal, Thomas contends, that his convictions must be reversed because, according to Thomas, the judge had declared a mistrial before the jury returned its verdict of guilty. All three members of the court agree that this contention does not warrant reversal. Each judge has stated his or her reasons in a separate concurring opinion.

■ Thomas has also made a number of other claims of error. These claims are rejected for the reasons stated in footnote 4 to Judge Schwelb's opinion.

*Affirmed.*

SCHWELB, Associate Judge, concurring:

## I.

## THE TRIAL COURT PROCEEDINGS

Thomas was arrested on November 14, 1995, and his trial began on August 15, 1996. After several days of trial, the jury began its deliberations on the afternoon of August 21. On the following afternoon, the jurors advised the judge that they had reached a verdict with respect to two of the counts of the indictment, but that they had been unable to resolve the remaining charges. The judge agreed to accept a partial verdict, and the jury acquitted Thomas of PWID and of PFCV.

On August 22, 1996, immediately before recessing for the day, the foreman of the jury advised the judge that "[w]e have done all we can...." On the following morning,

after some discussion between court and counsel, Thomas' attorney requested a mistrial. In response, the prosecutor stated that "if our jury is deadlocked and the defense is moving for a mistrial we would not oppose it subject to the government's right to rebring the charges ... at a later time." The judge inquired whether Thomas understood the consequences of a mistrial, and whether Thomas agreed with his attorney's request for such relief. Thomas responded to these inquiries in the affirmative, and the proceedings then continued as follows:

> THE COURT: All right, both parties are satisfied factual predicates for a mistrial have been established and I will grant the motion for a mistrial.
>
> [PROSECUTOR]: Satisfied, Your Honor.
>
> [DEFENSE COUNSEL]: Thank you, Your Honor.
>
> THE COURT: You can bring the jurors on in.
>
> (PAUSE)
>
> THE COURT: I will first inquire as to whether they have reached a unanimous verdict as to any of the remaining counts.
>
> (PAUSE)
>
> THE DEPUTY CLERK: Your Honor, the jury has asked if they could have a couple of minutes.
>
> THE COURT: Okay, we'll see what they have to say.
>
> (PAUSE)
>
> THE COURT: Mr. Foreperson, would you please stand and state your juror number?
>
> THE JUROR: Juror number 708.
>
> THE COURT: Would you answer this question by either yes or no. Has the jury reached a unanimous verdict as to any of the remaining charges?
>
> THE JUROR: Yes, sir.

In light of this denouement, the judge directed the jurors to return to the jury

---

**1.** *See* D.C.Code § 33–541(a) (1998). The jury acquitted Thomas of the greater offense of armed possession of cocaine with intent to distribute it (PWID), in violation of D.C.Code §§ 33–541(a)(1), 22–3202 (1996).

**2.** Thomas was found guilty of possession of a prohibited weapon, D.C.Code § 22–3214 (1996);

carrying a pistol without a license, § 22–3204(a); possession of an unregistered firearm, § 6–2311(a) (1995), and unlawful possession of ammunition, § 6–2361(3). He was acquitted of possession of a firearm during a crime of violence or dangerous offense (PFCV), § 22–3204(b).

room. According to the official transcript of the trial,[1] the following discussion ensued between court and counsel:

> THE COURT: Gentlemen, under the circumstances it is my inclination to *sua sponte* vacate the prior granting of the motion for mistrial. Anyone object to that?
>
> [DEFENSE COUNSEL]: No objection for the record, Your Honor, I—
>
> THE COURT: Having it both ways you think.
>
> [DEFENSE COUNSEL]: Right, I understand where the court is going, I'm trying to have my cake and eat it too. The court declared a mistrial which just wasn't communicated to the jury which is really [a ruling] at this point, the court issued a legal ruling and that—that at that moment, that just suspends whatever the jury decided thereafter[,] so that's my position for the record.
>
> THE COURT: What's the Government's position?
>
> [PROSECUTOR]: Your Honor, I think ... that we are in a posture now where we have to go ahead and take the verdict.
>
> My lack of an objection to the defense motion for mistrial was premised on the assumption that we had a deadlocked jury. It appears my assumption was incorrect and I understand the basis for [defense counsel's] motion. If I were in his position I would be making the same motion.
>
> THE COURT: All right. Well I think out of consideration of efficiency, justice, I don't see how anyone could possibly be prejudiced one way or the other regardless of what their verdicts are.
>
> And so I think under the somewhat unusual circumstances in this particular situation I'm obliged to vacate the granting of the motion for mistrial and we will take the verdict.

The jurors were then brought back to the courtroom, and they returned a verdict of guilty as to all of the remaining charges. A poll confirmed that the jury was unanimous. Thomas was subsequently sentenced to serve

a period of imprisonment. This appeal followed.

## II.

### LEGAL DISCUSSION

#### A. *The standard of review.*

The transcript of Thomas' trial reveals that when the judge stated his intention to "vacate the prior granting of the motion for mistrial," defense counsel responded: "No objection for the record, Your Honor." Given the lack of any objection, we should review the judge's decision on this issue for plain error. *See* Super.Ct.Crim.R. 52(b); *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 1548–50, 137 L.Ed.2d 718 (1997). Indeed, defense counsel's explicit lack of objection to the judge's proposed course of action arguably invited the judge's acceptance of the jury's verdict, and "courts are especially reluctant to reverse for plain error when it is invited." *Cowan v. United States,* 629 A.2d 496, 503 (D.C.1993) (citation and internal quotation marks omitted).

In order to show plain error, Thomas must demonstrate both that any error was "plain," in the sense of "clear" or "obvious," and that it undermined the fairness, integrity, or public reputation of the proceedings and resulted in a clear miscarriage of justice. *Johnson, supra,* 520 U.S. 461, 117 S.Ct. at 1549; *Cowan, supra,* 629 A.2d at 503. For the reasons set forth below, I am satisfied that Thomas has failed to satisfy either prong of the plain error standard.

#### B. *The "clear or obvious error" prong.*

In the present case, it is not at all clear or obvious that the judge erred by departing from his stated intention to declare a mistrial.

In the first place, the record raises a significant question as to whether a mistrial was ever actually declared. There is no entry on the case jacket indicating that the motion for a mistrial was granted. Moreover, immediately after stating, in language of the future tense, that "I *will* grant the motion for a mistrial," the judge indicated that his inten-

---

1. But see Part II D, *infra.*

tion to do so was conditional: "I will first inquire as to whether [the jurors] have reached a unanimous verdict as to any of the remaining counts." When the jurors were brought back to the courtroom, the judge made this very inquiry. If the judge's decision to declare a mistrial had been unconditional, and if it had already been made when the jurors were called back to the courtroom, then the inquiry as to whether the jury had reached a unanimous verdict would have been entirely superfluous. The most reasonable interpretation of the judge's initial comment—"I will grant the motion"—is that he was stating his conditional future intention to declare a mistrial, but that he would carry out this conditional intention only if the jurors had failed to reach a unanimous verdict on any of the remaining charges.

Subsequently, however, the judge stated that he was inclined to "vacate the prior granting of the motion for mistrial." This language implies that a mistrial had already been declared, and that it was therefore necessary to "vacate" the judge's prior decision. It is questionable whether the judge's choice of words—words that had to be selected on the spur of the moment—was designed to focus on the question whether he had already declared a mistrial or had merely announced his conditional intention to do so.

But even assuming, *arguendo,* that the judge's statement that "I will grant the motion for mistrial" constituted a declaration of a mistrial, and that the trial was over notwithstanding the judge's subsequent inquiry whether the jury had reached a unanimous verdict, I do not believe it to be "plain" or "obvious" that his decision to declare a mistrial was irrevocable where, as here, it had not been communicated to the jury, and where the jurors remained available and competent to serve. Thomas has cited no authority holding that a judge's order declaring a mistrial can never be revoked. If, as Thomas asserts in his brief, "[t]his appears to be an issue of first impression" in this jurisdiction,[2] it is difficult to perceive how

any error by the judge could have been "plain."

In any event, the case law tends to support the judge's authority to take the action that he did. Like Thomas, I have found no District of Columbia precedent addressing the specific question whether a trial judge may withdraw his declaration of a mistrial. In *Stewart v. United States,* 439 A.2d 461 (D.C. 1981) (per curiam), however, this court held that a trial judge may reconsider an order granting a defendant's motion for judgment of acquittal (MJOA) at any time prior to the actual entry of judgment. In *Stewart,*

[t]he [trial] court first denied the government's motion and orally granted the judgment of acquittal. It then reconsidered its rulings and, over objection, allowed the government to reopen its case. The jury returned to the courtroom and the case continued.

"The constitutional prohibition against 'double jeopardy' was designed to prevent an individual from being subjected to the hazards of a trial and possible conviction more than once." *Green v. United States,* 355 U.S. 184, 187 [78 S.Ct. 221, 2 L.Ed.2d 199] (1957). Here, appellant was not subjected to the harassment of a second trial, for a trial does not terminate until the actual entry of judgment; until then, the court is free to reconsider its rulings. [ (Citations omitted.) ]

The events which occurred at trial did not infringe on appellant's right to be free from double jeopardy. The court immediately reconsidered its ruling; no final judgment of acquittal was entered on any court documents; appellant was not discharged and subsequently brought back to stand trial; and the colloquy between court and counsel occurred outside the presence of the jury.

\* \* \* \* \* \*

"The only prejudice Baker suffered is psychological; his hopes were first raised, then quickly lowered. But so ephemeral and insubstantial an injury is not pro-

---

2. *But cf. Small v. Pennsylvania R.R. Co.,* 65 App. D.C. 112, 113–14, 80 F.2d 704, 705–06 (1935), *cert. denied,* 297 U.S. 724, 56 S.Ct. 669, 80 L.Ed. 1008 (1936), holding that an announcement by the jurors that they were unable to reach a unanimous verdict did not end the trial or preclude the judge from directing a verdict. *See also* 89 C.J.S. *Trial* § 482, at 134 n. 80 (1955).

scribed by the Constitution." [*United States v. Baker*, 419 F.2d 83, 89 (2d Cir. 1969), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970) ].

*Id.* at 464.

If an order granting the defendant's MJOA may be vacated prior to judgment without implicating double jeopardy concerns, then the same is true, *a fortiori*, of an order granting a mistrial. In *Stewart*, the defendant had been led to believe that he had been acquitted. In the present case, he had, at most, a brief expectation that his trial was over, but that he would be tried again. If the prejudice to Stewart was "ephemeral," then Thomas' claimed injury was even more so.

Moreover, on facts substantially identical to those here, the Texas Court of Criminal Appeals has rejected the position urged upon us by Thomas. In *Rodriguez v. State*, 852 S.W.2d 516 (Tex.Crim.App.1993) (*Rodriguez II* ), *rev'g* 834 S.W.2d 610 (Tex.App.1992) (*Rodriguez I* ), the defendant's attorney moved for a mistrial on the basis of an allegedly prejudicial comment made by the trial judge in the presence of the jury. After hearing argument of counsel outside the presence of the jury, the judge initially stated, "I think you're correct. Mistrial is granted." Following further discussion, however, the judge changed his mind and announced that "I would withdraw my ruling." The trial resumed, and the defendant was convicted.

On appeal, the defendant argued that "by virtue of [the mistrial] order, the trial itself becomes a dead horse, not susceptible to resurrection." *Rodriguez II*, 852 S.W.2d at 519 (quoting brief for the defendant). The intermediate appellate court reversed the conviction, holding that the trial judge was not authorized to withdraw his pronouncement of a mistrial and that therefore "the order, if any, rescinding the order granting the mistrial was void and of no effect." *Rodriguez I, supra*, 834 S.W.2d at 612. The Texas Court of Criminal Appeals, however, reversed the intermediate appellate court's decision and reinstated the defendant's conviction. The court explained that

at least as a matter of jurisdiction, the trial court does not lack authority to withdraw or rescind its order of mistrial. Appellant suggests, and we can conjure no other reason to hold that the trial court lacked authority to correct or modify its orders. That an order granting a mistrial that is *not* subsequently withdrawn does indeed have the effect of nullifying all proceedings to that point does *not* mean the trial court may not rescind that order, and continue with the trial, so long as that remains a viable option under the circumstances.

Here the trial court declared a mistrial, but that order was apparently withdrawn before the jury was discharged and presumably even before the jury was made aware of what exactly had occurred. On these facts, we hold that the trial court retained its authority to withdraw its order of mistrial. The court of appeals erred to conclude otherwise.

*Rodriguez II*, 852 S.W.2d at 520 (emphasis in original).

The decision in *Rodriguez II* finds some support in the following summary of the case law in one of the leading legal encyclopedias:

After the jury have been discharged for failure to agree the case is terminated with no issue determined and stands as if no trial had been had, and it is ready for retrial immediately or at a future time as directed by the court. The jury no longer have charge of, or power over, the case, and they cannot thereafter reassemble and agree on a verdict. It has been held, however, that *although the jury have been ordered discharged, they may still render a verdict if they have not separated and left the court room and their discharge has not been recorded.*

89 C.J.S. *Trial* § 482, at 134 (1955) (emphasis added) (footnotes omitted).

In the present case, as in *Rodriguez II*, the jury was unaware of, and unaffected by, the judge's indication, outside the presence of the jury, that he was granting the motion for a mistrial. Notwithstanding the judge's action, it is fair to say that, from the perspective of the jurors, "what followed did not look much like a mistrial." *United States v. Mora*, 26 M.J. 122, 123 (C.M.A.1988). Under

these circumstances, the judge's decision to accept the jury's verdict was not "plainly" or "obviously" wrong. Indeed, Thomas has presented no authority suggesting that the decision was wrong at all, and I have likewise found none.[3]

### C. The "miscarriage of justice" prong.

Thomas has likewise failed to satisfy the "miscarriage of justice" prong of the plain error doctrine. To the extent that the judge initially granted the motion for a mistrial, he did so on the basis of his belief that the jury was unable to reach a verdict. This belief was based on a misapprehension, for the jurors were in fact able, within minutes, to resolve the remaining charges. By accepting the jury's verdict, the judge acted on the state of facts that existed in reality (i.e., the jury was *not* deadlocked) rather than on the previous erroneous assumption that no unanimous verdict could be reached. The judge thus avoided the expenditure of time and resources on an unnecessary second trial. The social cost of retrials is substantial, particularly where, as in this case, the reasons for trying the case all over again would have no relation to the defendant's guilt or innocence. *See, e.g., United States v. Mechanik,* 475 U.S. 66, 72, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986).

Thomas does not claim, nor could he, that he took any action to his detriment in reliance on the trial judge's initial disposition of the motion for a mistrial. Indeed, the purported declaration of a mistrial was in effect only for a few minutes, and there was no time for any significant reliance interest to

arise. In sum, Thomas has offered nothing in his brief or in oral argument to suggest that the judge's action resulted in a miscarriage of justice. On the contrary, it would not be in the interest of justice to require a second trial under the circumstances here presented.

### D. The claimed transcription error.

At oral argument, Thomas' appellate counsel claimed for the first time that the transcript contains a critical error. Counsel contended that after the judge inquired whether there was any objection to his *sua sponte* vacation of his prior disposition of the motion for a mistrial, the defense attorney's response:

"No objection for the record, Your Honor,"

should have read

"No. Objection for the record, Your Honor."

According to appellate counsel, the dialogue that followed this exchange demonstrates that defense counsel actually intended to object to the judge's proposed course of action.

It is difficult to discern how the word "No" would fit into the quoted sentence if appellate counsel's proposed rendition of trial counsel's response were correct. In any event, the contention is being made unseasonably and in the wrong forum. This court's rules explicitly provide that "[a]ny difference as to the accuracy of the record shall be submitted to and settled by the trial judge." D.C.App.R. 10(e). Moreover, having failed to raise the issue in his main brief, and having failed to file a reply brief, Thomas has

---

**3.** The present case can be readily distinguished from *Arnold v. State,* 639 So.2d 553 (Ala.Crim. App.1993), which deals with the revocability of a mistrial order under circumstances different from those here. In *Arnold,* the trial judge declared a mistrial and excused the jury after one of the jurors became unavailable as a result of an illness in his family. In releasing the jurors, the judge advised them that they were free to discuss the case "with whomever you want," except potential new jurors. When it appeared that the previously unavailable juror would be available later in the week, the judge attempted to resurrect the trial by re-summoning the original jurors. The trial resumed, and the defendant was convicted. The appellate court reversed, emphasizing the fact that the jurors' freedom to discuss

this case with outsiders had potentially compromised their impartiality. *Id.* at 554–55. *See also Williams v. The People,* 44 Ill. 478, 481 (1867), in which the court stated:

> To permit a jury to disperse, and mingle with the community at large, for three days, without being under a charge from the court not to converse themselves, nor permit others to converse with them, or in their presence, about the case, would be to afford every facility for operating on the minds of the jury, and might be highly prejudicial to the fair administration of justice.

In the present case, on the other hand, the jurors were not released before returning their verdict, nor were they apprised of the discussions relating to a mistrial.

waived the point. *See, e.g., Williams v. Leach,* 938 F.2d 769, 772 (7th Cir.1991); *Cf. Joyner v. Jonathan Woodner Co.,* 479 A.2d 308, 312 n. 5 (D.C.1984).

## III.

## OTHER ISSUES

Thomas has raised a number of other contentions on appeal. I am of the opinion, which is shared by both of my colleagues, that the trial judge did not commit reversible error in relation to any of these issues.[4]

REID, Associate Judge, concurring, separate statement:

I am not persuaded that Thomas waived his right to object to the trial court's decision to vacate the prior granting of defense counsel's motion for a mistrial. However, I concur in the affirmance of the trial court's judgment because, based on the record before us, I agree with the following statements made by the trial judge in *sua sponte* vacating his prior granting of the motion:

> [I] don't see how anyone could possibly be prejudiced one way or the other regardless of what [the jury's] verdicts are.

> And so I think under the somewhat unusual circumstances in this particular situation I'm obliged to vacate the granting of the motion for mistrial and we will take the verdict.

4. Thomas claims that the trial judge erroneously excluded proffered testimony by a prospective defense witness to the effect that one of the persons who called the police on the night of Thomas' arrest had previously stated that she would "set him up." Although the question whether the exclusion of this evidence conformed to the requirements of *Winfield v. United States,* 676 A.2d 1 (D.C.1996) (en banc) is a close one, any error was harmless beyond a reasonable doubt. The "set-up" theory presupposed that the prospective witness, or someone in league with her, would have left a machine gun and drugs worth many thousands of dollars in the trunk of Thomas' car just to incriminate him, and that the police would find the contraband when they approached Thomas at 3 a.m. on the night in question. Moreover, the individual who was said to have planned to set up Thomas apparently called the police *after* the officers had already begun to question Thomas.

Thomas next complains that the prosecution's drug expert was erroneously permitted to testify

MACK, Senior Judge, concurring, separate statement:

Putting aside, for the moment, the conclusion of Judge Schwelb that the appellant has waived his right to object to the trial court's withdrawal of a grant of a motion for a mistrial (with which I disagree), I nevertheless agree with the trial court that this case involves "unusual circumstances." For that reason, I concur in affirmance.

regarding the connection between guns and drugs. Assuming, without deciding, that defense counsel's general objection to expert testimony sufficiently preserved this point, there was no abuse of discretion. *See, e.g., Irick v. United States,* 565 A.2d 26, 31 (D.C.1989) (upholding admission of expert's testimony that "when you relate to drugs and guns it's like a marriage").

Thomas also asserts that the prosecutor vouched for the credibility of his witnesses. If the prosecutor's relevant remarks are viewed in context, however, there was no improper vouching. *See id.* at 34–37. Moreover, any hypothetical impropriety in the prosecutor's argument did not appreciably affect the verdict.

Finally, Thomas contends that the judge erred by denying a defense request for a "missing witness" instruction. Thomas has not demonstrated, however, that the judge abused his broad discretion in this regard. *See Harris v. United States,* 602 A.2d 154, 162 (D.C.1992) (en banc); *Thomas v. United States,* 447 A.2d 52, 58 (D.C. 1982).