**In re Quentin W. BANKS, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 83–8.**

District of Columbia Court of Appeals.

Submitted April 28, 1983.

Decided May 31, 1983.

Before NEWMAN, Chief Judge, and FERREN and BELSON, Associate Judges.

PER CURIAM:

The matter is before us for our consideration of the Report and Recommendation of the Board on Professional Responsibility. Respondent has not contested the Board's recommendation.

The record reveals five separate acts of neglect of professional obligations on the part of respondent, a member of the bar. The Hearing Committee concluded that respondent's conduct violated 6 DR § 101(A)(3), which requires that "A lawyer shall not . . . [n]eglect a legal matter entrusted to him." It recommended the sanction of informal censure. The Board on Professional Responsibility agreed with the Hearing Committee's findings of neglect. However, in light of two prior informal disciplinary proceedings against respondent in other cases, the Board recommends a more severe sanction: public censure. We agree with the Board's recommendation.

Accordingly, it is ORDERED by the court that Respondent Quentin W. Banks, be, and he hereby is, publically censured for the reasons set forth in the appended Report and Recommendation of the Board on Professional Responsibility.

*So ordered.*

## APPENDIX

BOARD ON PROFESSIONAL RESPONSIBILITY DISTRICT OF COLUMBIA COURT OF APPEALS

Bar Docket No. 244–81

IN THE MATTER OF QUENTIN W. BANKS, ESQUIRE, RESPONDENT

## REPORT AND RECOMMENDATION

This matter is before the Board on Professional Responsibility on the report of Hearing Committee Number Four. Since this case was heard on stipulated facts, we set forth the stipulation in its entirety:

1. Quentin W. Banks is an attorney admitted to practice in the District of Columbia.

2. Respondent filed a complaint to contest the will of Effie M. Bailey, deceased, in the Probate Division of the District of Columbia Superior Court on July 11, 1980, on behalf of Grace Gray, Donald Bailey, Elwood Anderson, Howard Anderson, and Gordon Anderson.

3. Paragraph 11 of said complaint alleged that the testatrix, Effie M. Bailey, was incompetent at the time she purportedly signed her last will and testament, dated February 21, 1980.

4. The complaint also alleged fraudulent inducement, undue influence, and coercion of the testatrix.

5. On October 8, 1980, Defendants propounded Interrogatories to all plaintiffs. Respondent filed no answer to these Interrogatories on behalf of the plaintiffs and did not move for an extension of time in which to file answers.

6. On March 18, 1981, Defendants moved to compel Answers to Interrogatories under SCR 37. Respondent filed no opposition to Defendants' motion and on April 16, 1981 the Court entered an Order directing Plaintiffs to file and serve Answers to Interrogatories on or before May 4, 1981.

7. On May 4, 1981, a set of Answers entitled "Plaintiff's Answers to Interrogatories of Defendants" was filed with the Court. These answers bore only the signature, verification and oath of one plaintiff, Donald A. Bailey.

8. On May 22, 1981 Defendants filed a Motion to Dismiss for Want of Prosecution which alleged that only one plaintiff had responded to discovery and that those answers were grossly inadequate and unre-

sponsive. Defendants' Motion was served by mail on respondent on May 21, 1981.

9. Respondent filed no Opposition to Plaintiff's Motion to Dismiss, and on June 25, 1981, the Court dismissed the complaint for want of prosecution.

10. On July 22, 1981, respondent moved the Court to vacate and reconsider its order of June 25, 1981. A hearing on this motion was held on September 28, 1981.

11. At the time of the September 28, 1981, hearing on Plaintiff's Motion, respondent had not filed Answers to Defendants' Interrogatories.

12. Bar Exhibit 10, the Court's Order of November 20, 1981, which issued as the result of the September 28, 1981, hearing is unchallenged.

On these stipulated facts, the Hearing Committee concluded that respondent's conduct violated DR 6–101(A)(3), which requires "A lawyer shall not ... neglect a legal matter entrusted to him." We agree.

On the undisputed facts of this case, we discern at least five separate acts of neglect. First, respondent had served upon him interrogatories on October 8, 1980. For more than five months thereafter, respondent failed to file answers to the interrogatories and failed to request any extension of time on behalf of his clients. Second, when, on March 18, 1981, his opponent filed a motion to compel, respondent failed to respond to the motion on behalf of his clients. Third, when the court ordered that answers be filed, respondent filed answers on behalf of one plaintiff which were subsequently characterized by the court as being "ridiculously inadequate." Fourth, when a motion to dismiss the case for want of prosecution was filed on May 22, 1981, respondent failed to file any opposition on behalf of his clients. Fifth, when that motion was granted and the case was dismissed, respon-

dent waited almost a month before he filed a motion to reinstate his clients' case. We view these acts as repeated acts of neglect that show a pattern of neglect on the part of respondent. We have no doubt that such conduct violates DR 6–101(A)(3) proscribing neglect.

In his defense, respondent raised four matters before the Hearing Committee. First, respondent points out that his clients have not complained against him but that the complaint in this case was initiated by Bar Counsel. The Hearing Committee in its report to this Board correctly points out that Rule XI, Section 6(1)(b) of the Rules of the District of Columbia Court of Appeals Governing the Bar of the District of Columbia provides that Bar Counsel must pursue all matters involving alleged attorney misconduct regardless of whether the matter is called to his attention by complaint "or otherwise." We have repeatedly interpreted this rule to mean that the source of the complaint is irrelevant in our proceedings. The only proper inquiry for the disciplinary system is whether the disciplinary rules have been violated. In this case, they were.

Second, in a variation on the same theme, respondent points out that no harm has resulted to his clients since the only count on which they had any hope of prevailing— incompetency of the testatrix—was reinstated by the court. The report of the Hearing Committee, at pages 4 and 5, seems to suggest that the Hearing Committee did indeed find that there was prejudice to the clients upon which a finding of neglect might be based.

So that there is no doubt on this matter, we pause to point out that prejudice is not an element of neglect as that violation is defined in DR 6–101(A)(3), and our previous cases have so held. *In the Matter of Whitlock,* 441 A.2d 989, 991 (D.C.C.A.1982).[1]

---

1. The conduct proscribed by DR 7–101(A) is different. First, the conduct proscribed there must, by the terms of the disciplinary rule itself, be intentional. Also, DR 7–101(A)(3) refers specifically to prejudice to the client. In short, the authors of the Code of Professional

Responsibility knew perfectly well how to make prejudice to the client an element of the disciplinary violation when that is what they intended. In the case of neglect, they chose not to do so.

Whether a respondent has violated DR 6–101(A)(3) does not turn on prejudice to the client because in many neglect cases whether the client is prejudiced is largely a matter of fortuity. This case illustrates the point perfectly; but for the grace of the probate judge, respondent's clients might have lost their cause of action entirely. No lawyer can, or should be allowed to, take such chances with his clients' interests and then later plead fortuitous good luck in his defense. When viewed from the perspective of the disciplinary system's responsibility to protect the public from unworthy attorneys, to maintain the integrity of the profession, and to deter shoddy practice, it is clear that whether the client happens to be prejudiced or not should not determine the outcome of disciplinary cases involving neglect.

So we say once again that prejudice to the client is not an element of a charge of neglect, although the existence *vel non* of prejudice to the client may be relevant on the issue of sanction.

Third, respondent argues that he was lulled into a false sense of security because he was having settlement discussions with representatives of the other side. He particularly blames the fact that one of the defendants, an attorney who was the nominated executor of the contested estate, was discussing settlement with him at the same time that another attorney representing the executor was acting aggressively to defeat his clients' suit. The short answer is that, no matter what was transpiring between respondent and the nominated executor, respondent was served twice—once in March 1981 with a motion to compel and again in May 1981 with a motion to dismiss—with papers that threatened the very viability of his clients' cause of action. His inactivity in the face of repeated obvious threats to his clients' interests is neglect and cannot be condoned.

Fourth, respondent answers the petition by saying that he had great difficulty in dealing with his clients, several of whom lived out of the jurisdiction. If respondent was having difficulty in contacting his clients or in securing their cooperation, he had a clear responsibility either to negotiate a stipulation extending the time for his answers to the interrogatories or, failing the cooperation of opposing counsel, to make a motion for an extension to the court. We share the Hearing Committee's skepticism about respondent's contention in this regard in view of the fact that respondent not only failed to file answers or seek an extension but also did not oppose the motions to compel and to dismiss.

Even if respondent had somehow managed to overlook his duty to answer the interrogatories or to seek an extension of the time, it is difficult to believe that he also overlooked his duty to answer motions to compel and to dismiss. At a minimum, his failure to do so was neglectful and was not excused by any difficulty that he may or may not have been experiencing at the hands of his clients.

Of course, if the failure of cooperation on the part of his clients had completely stymied respondent's efforts on their behalf, then he had a responsibility, after making reasonable efforts to secure their cooperation, to withdraw from representing them. What he could not do was to continue to represent them and at the same time to continue to fail to take any steps to protect their interests.

We turn now to the question of sanction. The Hearing Committee in this case recommended that respondent be informally admonished. Bar Counsel urges us to increase the sanction in this case to public censure emphasizing the fact that respondent has already received two prior informal admonitions. We depart in this case from our usual deference to the Hearing Committee because it appears from the record that the Hearing Committee was unaware that respondent had been informally admonished on two previous occasions.

At the end of the hearing conducted on May 26, 1982, the Chair informed the Assistant Bar Counsel that the Hearing Committee would let Bar Counsel know if the

Committee wanted to hear information concerning respondent's prior record of discipline. So far as the record discloses, Bar Counsel did not submit such information, apparently because he was not asked to do so by the Hearing Committee. Bar Counsel's post-hearing memorandum, while arguing the question of sanction vigorously, did not mention respondent's two prior informal admonitions. In turn, the Hearing Committee's report also makes no mention of respondent's record of prior discipline. These matters appear to have been mentioned for the first time in the Brief Of Bar Counsel In Opposition To The Recommendation Of Hearing Committee That Respondent Be Awarded An Informal Admonition filed at the Board level.

Since this Board has a degree of latitude in overseeing and harmonizing the sanctions that are imposed in various cases where violations of the disciplinary rules are found, we do not feel that a remand to the Hearing Committee for consideration of the record of prior discipline is appropriate.

Turning now to respondent's record of prior discipline, we find that on November 25, 1974, respondent was the subject of a private reprimand, a sanction no longer extant in our system but closely analogous to the present-day informal admonition. In the case at issue there, Bar Docket No. 66–74, respondent settled a case on behalf of a client who immediately expressed dissatisfaction with the settlement. Respondent took no action to advise the court of the problem or to seek to vacate the dismissal of the case or to reopen the settlement. Also, respondent withdrew from representation of his client in a manner that violated the disciplinary rules. Respondent accepted the private reprimand.

In Bar Docket No. 349–76, on September 2, 1977, respondent was administered an informal admonition in connection with his representation of a party contesting a will. Respondent's client paid a retainer fee and on September 24, 1976, signed a complaint that respondent had drafted. Respondent waited until July 18, 1977, nearly ten months, to file the complaint. In the meantime, he took no steps to preserve the contested estate or to discover evidence that would have been of assistance to his client. Respondent accepted the informal admonition.

Thus, as background to the present case, it appears that respondent has twice before been the subject of an informal admonition in an attempt on the part of the disciplinary system to persuade him to improve his practice. We are particularly troubled by the fact that one of the informal admonitions previously administered bears a striking resemblance to the derelictions found in the present case. Both cases involve respondent undertaking to represent parties contesting wills and then neglecting his duties to his clients.

We think that the prior decisions of this Board and of the court show that an attorney involved in an isolated instance of neglect will ordinarily be informally admonished or reprimanded by the Board, *In the Matter of Mailloux,* Bar Docket No. 66–79 (BPR 1981); *In the Matter of Roundtree,* Bar Docket No. 31–76 (BPR 1978); *In the Matter of Rosenthal,* Bar Docket No. 118–77 (BPR 1978), or censured by the court, *In the Matter of Mizel,* DP–7–74 (D.C.C.A. 1975), depending upon the seriousness of the case.

Where neglect is coupled with other infractions or is particularly egregious, the court has approved suspensions of six months. *In the Matter of Whitlock,* 441 A.2d 989, 992; *In re Russell,* 424 A.2d 1087 (D.C.C.A.1980); *In the Matter of Lieber,* 442 A.2d 153 (D.C.C.A.1982); *In the Matter of Ramos,* M–74–81 (D.C.C.A.1981).

The Hearing Committee characterized respondent's conduct as being "neglect which is unaggravated but essentially unmitigated" (Hearing Committee Report at 6). All other things being equal, as indeed they never are, we might have considered a reprimand the appropriate sanction in this case. However, we are bound to take into account respondent's record of prior discipline. On the other hand, the neglect in

this case is not compounded by other disciplinary violations which might justify a suspension of six months. Although choosing between a suspension of three months and a public censure by the District of Columbia Court of Appeals is not a choice entirely free from doubt, in the last analysis, we recommend to the court that respondent be publicly censured.

FOR THE BOARD ON PROFESSIONAL
RESPONSIBILITY

/s/ Mark W. Foster by J.C.M.
MARK W. FOSTER, Member

Date: January 6, 1983

All members of the Board participated in this decision.