**In re Melvin J. WASHINGTON, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 84–1549.**

District of Columbia Court of Appeals.

Submitted Jan. 30, 1985.*

Decided Feb. 28, 1985.

Before NEBEKER, FERREN and BELSON, Associate Judges.

ORDER

This matter is before the court on the Report and Recommendation of the Board on Professional Responsibility. The Board considered the report of a hearing committee on charges against respondent Melvin J. Washington arising from two matters:

* Neither Bar Counsel nor respondent has filed a brief with this court.

1. In so doing, the Board adopted the recommendation of the hearing committee, which suggested a suspension of three to six months, depending

respondent's conduct of a landlord-tenant matter which he undertook for Debra Nesbitt, the mother of his secretary (Bar Docket No. 276–82); and his actions as conservator of the estate of Francis R. Jones (Bar Docket No. 57–83). The Board adopted the findings of the hearing committee that, in the Nesbitt matter, respondent had practiced law in a jurisdiction where he had no license, DR 3–101(B), and had neglected a legal matter entrusted to him, DR 6–101(A)(3); and that, in the Jones matter, he had neglected a legal matter entrusted to him, DR 6–101(A)(3), and had engaged in conduct prejudicial to the administration of justice, DR 1–102(A)(5). The Board agreed with the hearing committee that other charges against Washington should be dismissed. We accept the Board's findings of fact as supported by substantial evidence of record. D.C.App.R. XI § 7(3). We also agree with the Board's conclusions of law that respondent had violated the specified disciplinary rules.

The Board, with one member dissenting and another not participating, recommended a three-month suspension from the practice of law as the appropriate sanction for respondent's violations.[1] We will adopt the Board's recommended disposition "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." D.C.App.R. XI § 7(3). There are mitigating factors in respondent's case, notably his record of *pro bono* service and the absence of any prior ethics violation. Nevertheless, respondent's two cases of neglect, his practicing law without a license in the Nesbitt matter, and his conduct prejudicial to the administration of justice in the Jones matter—both in his failure to provide information to the court's designee (the

ing upon whether the Board found a violation of DR 1–102(A)(5), in the Nesbitt case, which had questionable evidentiary support. The Board found no violation in that case, and accordingly recommended the lesser sanction.

auditor-master), and in his refusal to cooperate with Bar Counsel's investigation of that failure—convinced both the hearing committee and the Board that a suspension from the practice of law was warranted. Our review of the cases reveals that the recommended suspension of three months is consistent with precedent and fair under the circumstances. *See, e.g., In re Jamison,* 462 A.2d 440 (D.C.1983); *In re Knox,* 441 A.2d 265 (D.C.1982); *In re Dwyer,* No. M–61–80 (D.C. June 9, 1981); *In re Harmon,* No. M–79–81 (D.C. December 14, 1981); *In re Schattman,* No. M–63–81 (D.C. June 2, 1981); *In re Russell,* 424 A.2d 1087 (D.C.1980) (six months for lesser offense). We therefore adopt and incorporate the appended Report and Recommendation of the Board.[2]

Accordingly, it is

ORDERED that Respondent Melvin J. Washington, is suspended from the practice of law for three months, effective 30 days from the date of this decision and order.

## APPENDIX

## BOARD ON PROFESSIONAL RESPONSIBILITY DISTRICT OF COLUMBIA COURT OF APPEALS

Bar Docket Nos. 276–82, 57–83

IN THE MATTER OF: MELVIN J. WASHINGTON, RESPONDENT.

## REPORT AND RECOMMENDATION

This matter is before the Board on Professional Responsibility as a result of two reports filed by Hearing Committee No. Seven in two separate matters concerning the same Respondent. We pause at the outset to recognize the care and thoughtfulness with which Hearing Committee No. Seven has prepared its two reports to this Board. The reports before us are comprehensive and thoughtful and have greatly

simplified our task in dealing with these cases.

In the first case that we consider (Docket No. 276–82), Respondent is charged with a series of disciplinary violations arising from his representation of the mother of his secretary in a small claims matter in Maryland. In this connection, Respondent is specifically charged with practicing law in a jurisdiction in which he did not have a license and with neglecting the case.

In the second case before us, Respondent is charged with two disciplinary violations as a result of his appointment as a conservator. The violations charged are neglect and conduct prejudicial to the administration of justice.

We turn to each case separately.

## BAR DOCKET NO. 276–82 (NESBITT)

### I. *Facts.*

In May 1982, Ms. Debra Nesbitt, who is the mother of Respondent's then-secretary, consulted Respondent concerning difficulties that she had experienced in recovering a security deposit from her former landlord. Respondent wrote a letter to the landlord, but the letter failed to resolve the matter. The letter stated in part: "This office has been retained to represent the interest of Ms. Nesbitt."

When the letter failed to secure the return of the security deposit, Respondent drafted a small claims complaint in his own handwriting and gave it to his secretary to type. Respondent caused his office address and telephone number to be placed on the complaint in a manner that indicated that he was representing Ms. Nesbitt, and he signed it. He then personally filed the complaint in the District Court of Maryland in Prince George's County. Respondent was not licensed to practice law in the state of Maryland.

When the small claims case came on for trial, Respondent could not attend the trial

---

**2.** For completeness of the record, we also publish the opinion of the dissenting member of the Board.

because of a conflict in his schedule. Ms. Nesbitt went to court and obtained a continuance.

On the second court date, Respondent again was unable to attend court because of a conflicting obligation. He instructed his secretary to tell her mother that he would be out of town on business on the trial date but that Ms. Nesbitt should speak with a Maryland attorney by the name of Henderson, who had agreed to represent Ms. Nesbitt. When the secretary contacted Mr. Henderson, he stated that he had not agreed to represent Ms. Nesbitt and suggested that Ms. Nesbitt represent herself.

As a result, Ms. Nesbitt appeared in court by herself and sought another continuance. Evidently, judgment was entered by default because of Ms. Nesbitt's failure to prosecute the case. On the following day, Ms. Nesbitt wrote a letter to the judge of the Maryland court explaining the history of her case. Subsequently, the Maryland court vacated the default judgment and reset the matter for trial. The Maryland judge also referred the matter to the Attorney Grievance Commission of Maryland, which, upon discovering that Respondent was not admitted in Maryland, forwarded the file to the District of Columbia disciplinary system. The small claims case eventually went to trial, and Ms. Nesbitt recovered approximately $265.00.

Ms. Nesbitt testified that throughout the course of events recited above, she experienced the greatest difficulties in attempting to contact Respondent, who repeatedly failed to return her telephone calls.

The Hearing Committee found that all of the facts recited above had been proven by Bar Counsel by clear and convincing evidence, and we find substantial evidence in the record as a whole to support that conclusion.

## II. *Discussion.*

Based upon the conduct outlined above, Bar Counsel charged six offenses.

First, Bar Counsel charged a violation of Disciplinary Rule 3–101(B), which requires that: "[a] lawyer shall not practice law in a jurisdiction where to do so would be in violation of the regulations of the profession of that jurisdiction." It was uncontested that Respondent was not licensed to practice law in the state of Maryland. It can not be seriously contended that the preparation and filing of a complaint on behalf of another does not constitute the practice of law. Thus, the Hearing Committee found a violation of DR 3–101(B), and we agree.

Second, Bar Counsel charged a violation of DR 6–101(A)(3), which requires that a lawyer not neglect a legal matter entrusted to him. The Hearing Committee found, and we agree, that Respondent's failure to pursue Ms. Nesbitt's case, failure to appear for trial, failure to assert her statutory right to treble damages, failure to secure other counsel to appear when he was unable to do so, and failure to return her telephone calls all amounted to neglect. Once again, we believe that the Hearing Committee has correctly analyzed this aspect of the case.

Third, Bar Counsel charged a violation of DR 6–101(A)(1), which prohibits an attorney from handling a legal matter that he knew, or should have known, he was not competent to handle, without associating with him a lawyer who is competent to handle the matter. The Hearing Committee declined to find a violation of this Disciplinary Rule, opining that the rule is aimed at expertise and not at legal qualifications such as licensure to practice law. We agree with the Hearing Committee and note that the acts charged under this rule are adequately covered by the two rules already cited (DR 3–101(B) as to failure to hold a license and DR 6–101(A)(3) as to failure to assert statutory rights to treble damages). Therefore, we need not reach the charge under DR 6–101(A)(1), which is duplicative.

Fourth, Bar Counsel charged a violation of DR 6–101(A)(2), which forbids an attor-

ney to handle a legal matter without preparation adequate in the circumstances. Specifically, Bar Counsel claimed that Respondent's failure to amend Ms. Nesbitt's complaint to allege her entitlement to treble damages under the Maryland statute concerning the recovery of security deposits from landlords violated this rule. Once again, the Hearing Committee found that no violation was made out, and we agree. The Hearing Committee found two fundamental defects in Bar Counsel's case. In the first place, the principal evidence underlying Bar Counsel's theory concerning inadequate preparation was Bar Exhibit 12,[1] a document that was not marked for evidence prior to the hearing and therefore not authenticated under Board Rule 7.14. Specifically, at a pre-hearing conference conducted well before the hearing, the Hearing Committee Chair set a deadline by which all exhibits to be offered at the hearing were to be produced by the respective parties. Bar Counsel did not comply with the Chair's order as regards to Exhibit 12.

The Hearing Committee specifically considered and rejected Bar Counsel's argument that the evidence contained in Bar Exhibit 12 was newly discovered, pointing out that although Bar Counsel may not have been aware of the exhibit, it was in the possession of the complainant throughout the relevant period of time and was therefore readily available to Bar Counsel upon inquiry.

We try in all cases not to apply the rules of procedure to our Board in a wooden or mechanistic manner. However, certain rules must be complied with to insure the orderly presentation of evidence, absent particular circumstances justifying departure from the rules, none of which were asserted by Bar Counsel in this case. We feel a particular responsibility to enforce reasonable orders entered by the Chairs of our Hearing Committees. The Hearing Committees are charged with the difficult and burdensome task of conducting evidentiary hearings in the cases brought before the Board. When the Hearing Committees enter reasonable orders designed to protect the fairness of the proceedings before them and to ensure the integrity of their hearings, we will recommend to the Court of Appeals enforcement of those orders except where circumstances clearly do not justify the order entered. Bar Counsel offers no persuasive reason why the pretrial order entered by the Chair should not be enforced and we therefore recommend to the Court that no violation be found on this aspect of the case. We are further moved to the same result because the specification of charges attached to the petition in this case did not specifically charge as a violation Respondent's failure to amend the complaint to increase the damages prayed for as allowed by the Maryland treble damages statute.[2] As a result, under *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), the Hearing Committee felt, and we agree, that Respondent was not fairly put on notice of the nature of the charges against him. Thus, the *Ruffalo* point is yet a more fundamental justification for the result reached by the Hearing Committee: to wit, no adequate proof of a violation of DR 6–101(A)(2).

Fifth, Bar Counsel charged violations of DR 7–101(A)(2) and (3), which respectively

---

1. Bar Exhibit 12 was a page from a pamphlet entitled "Security Deposits and Application Fees." The exhibit points out that a tenant whose security deposit is wrongfully withheld by a landlord has the right in Maryland to sue for three times the amount withheld. Ms. Nesbitt claimed that she had read the pamphlet and had discussed its contents with Respondent, who had assured her that her small claims complaint would be amended to seek treble damages. To bolster Ms. Nesbitt's testimony in this regard, Bar Counsel marked for identification and sought to have admitted in evidence a copy of the pamphlet, or at least the relevant page therefrom.

2. Paragraph 9 of the Specification does mention Respondent's failure to amend the small claims complaint. However, unless the words "this conduct" in Paragraph 10 can be read to refer to the failure to amend, no specific charge is made. In our opinion, the reference is simply too vague to withstand scrutiny under *Ruffalo.*

prohibit a lawyer from intentionally failing to carry out a contract of employment and from prejudicing or damaging his client during the course of a professional relationship. The hallmark of these two disciplinary rules, which distinguishes them from the neglect charge under 6–101(A)(3), is the requirement that Respondent have acted intentionally. The Hearing Committee did not find clear and convincing evidence on this record that Respondent's defaults in Ms. Nesbitt's case were intentional. We do not disagree with this finding of the Hearing Committee, which was far closer to the "feel" of the evidence than we are at this remove. Therefore, we recommend to the Court that it not find violations of the two disciplinary rules just cited.

As a general defense to all of the disciplinary charges discussed up to this point, Respondent asserts that his relationship with Ms. Nesbitt was not the type of professional relationship that calls into play the operation of the disciplinary rules. Respondent argues that he agreed to assist Ms. Nesbitt in prosecuting her claim against her former landlord in an informal way, as an accommodation to his secretary, and without any expectation of receiving a legal fee. The Hearing Committee accurately points out that the District of Columbia Court of Appeals has unequivocally stated that: "[i]t is well established that neither a written agreement nor the payment of fees is necessary to create an attorney-client relationship." *In re Lieber,* 442 A.2d 153, 156 (D.C.1982) (citations omitted).

In echoing the Court of Appeals, we have pointed out repeatedly, *see, e.g., In re Kersey,* Bar Docket Nos. 275–80, *et al.,* (BPR May 1984) pp. 50–52, and point out once again, that where an attorney agrees to act for another person in a legal matter, the attorney undertakes the full burdens of the legal relationship no matter how informal or how unremunerative that relationship may be. Indeed, it is not uncommon for us to have before us cases in which attorneys have handled in a slipshod or excessively

casual fashion cases undertaken as a favor to relatives, friends, and business associates. We say again, in the hopes that our message will reach the ears of the whole Bar, that when an attorney undertakes to act on behalf of another person in a legal matter, no matter how pure or beneficent his original intention may have been, he invokes upon himself the entire structure of the Code of Professional Responsibility and its consequent enforcement through disciplinary proceedings.

The short truth of the matter is that the code does not, and can not, create two tiers of ethical obligations, one for attorneys acting formally and for gain, and another for those who act for other reasons. All attorneys must act in an ethical manner when they act as attorneys regardless of what motivates them to undertake the attorney/client relationship.

Finally, we pause briefly to note Respondent's argument that he did not really act as Ms. Nesbitt's attorney at all. The argument does not survive a moment's scrutiny. Respondent affirmatively represented in the letter that he wrote to the landlord that he had been retained by Ms. Nesbitt. He prepared a complaint and filed it on her behalf. He put his address and telephone number on the complaint in a way that could only have led a reasonable reader to conclude that he was acting as Ms. Nesbitt's attorney. He advised her to seek a continuance or to consult another attorney when he was unable to attend court. Finally, as the Hearing Committee rightfully emphasizes, Ms. Nesbitt had a clear expectation that Respondent was acting as her lawyer. In the face of this overwhelming evidence, we reject Respondent's argument as frivolous, as did the Hearing Committee.

### III. *Conduct Prejudicial to the Administration of Justice.*

In addition to the charges discussed above, Bar Counsel charged a violation of DR 1–102(A)(5), which prohibits conduct prejudicial to the administration of justice. Specifically, Bar Counsel charged that Re-

spondent failed to answer repeated requests from Bar Counsel for information concerning this case. Bar Counsel sent letters to Respondent asking for responses on January 31, February 22, April 25, and June 2, 1983. None of these communications from Bar Counsel was answered by Respondent. The Court of Appeals has held repeatedly that a lawyer admitted to our Bar has a responsibility to respond to such inquiries and that failure to do so amounts to conduct prejudicial to the administration of justice. *In re Haupt,* 444 A.2d 317 (D.C.1982); *In re Lieber,* 442 A.2d 153 (D.C.1982); *In re Whitlock,* 441 A.2d 989 (D.C.1982); *In re Russell,* 424 A.2d 1087 (D.C.1980); *In re Willcher,* 404 A.2d 185 (D.C.1979). The Hearing Committee carefully weighed Respondent's testimony denying that he had received Bar Counsel's inquiries and rejected it in substantial part. See discussion at pages 14 through 16 of the Hearing Committee Report in Docket No. 276–82.

However, the Hearing Committee has presented a more difficult issue for us. In his case in chief, Bar Counsel introduced no evidence at all to establish the mailing or delivery of the various written investigative inquiries that Bar Counsel alleged Respondent had received and failed to respond to. Respondent then proceeded to put on his defense after carefully ascertaining that Bar Counsel had rested. During the affirmative presentation of Respondent's case in defense, he presented no evidence on the charge of conduct prejudicial to the administration of justice.

Finally, in Bar Counsel's cross examination of Respondent, Bar Counsel belatedly attempted to introduce the relevant documents in evidence and to elicit testimony from Respondent concerning his receipt of the documents. As in the case of the inadequate preparation charge, discussed at pages 7–9 above, Bar Counsel had once again failed to produce the relevant documents for the Respondent in conformity with the Chair's pretrial ruling. For the reasons stated concerning the parallel point

above, we once again find that the Hearing Committee's reasonable pretrial ruling in this regard deserves to be enforced. We therefore recommend that the Court hold that the documentary evidence not be received because of Bar Counsel's failure to comply with the procedures established by the Hearing Committee.

In a more general way, Bar Counsel argues that the *sui generis* nature of disciplinary proceedings, which have as their aim the protection of the public, justifies a relaxation of the rules in this case. Bar Counsel inveighs against "rigid formalities" and "meaningless technicalities." We wish to make it unequivocally clear that, while we recognize and try to adhere to a certain degree of informality as mandated by the Court's rules, we conclude that Bar Counsel has taken his argument to a meaningless extreme in this case. The procedures set forth by the Hearing Committee —first, in insisting that documentary evidence be exchanged by the parties before the hearing and second in insisting that Bar Counsel limit his cross examination of Respondent to the matters testified to by Respondent on direct examination—were reasonably calculated to control and expedite the presentation of the evidence and therefore deserving of enforcement. Counsel should not resort to generalized invocations of the *sui generis* nature of the disciplinary proceedings in order to justify failure to follow the rules.

We particularly wish to comment on the Hearing Committee's finding concerning Bar Counsel's argument that, having been allowed by other Hearing Committees to withhold examination of Respondents until such time as the Respondents testify in their own behalf, Bar Counsel was entitled to assume that this Hearing Committee would permit him the same latitude. We make no comment here concerning the propriety of Bar Counsel's withholding examination of Respondent rather than calling Respondent as part of his case in chief. We do, however, wish to point out that Bar Counsel is not entitled simply to assume

that an unusual procedure of this type, if indeed it is followed by some Hearing Committees, will automatically be followed by every other Hearing Committee.

By and large, the Hearing Committees are expected to conduct their hearings in conformity with the generally accepted norms and customs of evidentiary presentation. If Bar Counsel intends to rely upon an unusual or aberrant procedure that he has used elsewhere in the past, then he has a responsibility to make that fact clear to the Hearing Committee Chair and to seek the Chair's approval before so proceeding. It is not enough for Bar Counsel to assume that he will be permitted to conduct the hearing in whatever fashion he chooses and then to attempt to persuade the Hearing Committee that his conduct is justified by his experience in other Hearing Committees.

Finally, we wish to point out that this Hearing Committee report illustrates the procedure that we have instituted under Board Rules 7.12 and 10.1, which in essence requires that where a challenge is made to the introduction of evidence, as Respondent challenged the introduction of Bar Counsel's evidence on the conduct prejudicial to the administration of justice charge, the Hearing Committee hear the evidence, inform the Board as to what ruling on the admission of the evidence it would recommend, and include in its report its recommendation as to the appropriate outcome both if the evidence is admitted and if it is not. The Hearing Committee has done exactly that in this case, and we have found its report to be particularly useful and instructive as a result.[3]

---

**3.** The Hearing Committee exercised its discretion pursuant to Board Rule 7.8 to proceed in the presence of a quorum of two members. Respondent objects to this procedure, insisting that the Hearing Committee must have three members present in order to conduct a hearing. As the rule just cited makes clear, the presence of three members is the norm when hearings are conducted. However, there are circumstances in which it is impossible to obtain the presence of three members of the Hearing Committee without causing inordinate delay in our already ponderous system. In those circumstances, at least where the two members present agree on their conclusions as to the evidence and their assignment of the credibility questions presented, if any, we are satisfied that the procedure followed by the Hearing Committee in this case, and in the other case discussed in this report, satisfies the requirement of due process, is fair to Respondent, at least where the two members present concur, and comports with the Court's rules. *See* Rule XI, Section 5(1) of the Bar Rules of the District of Columbia Court of Appeals. *Cf. District of Columbia v. Konek,* 477 A.2d 730 (D.C.1984).

## BAR DOCKET NO. 57–83 (JONES CONSERVATORSHIP)

### I. *Facts.*

By order dated May 4, 1982, the Committee of Francis R. Jones was removed by the Superior Court of the District of Columbia. The order removing the Committee referred the matter to the auditor-master of the court to state an account for the removed Committee and to report to the court his findings and recommendations. By order dated May 7, 1982, and filed on May 10, 1982, Respondent was appointed the conservator of the Estate of Francis R. Jones in Superior Court Case MH No. 853–49.

On June 24, 1982, Respondent met with the auditor-master of the Superior Court, the Honorable John W. Follin. The auditor-master explained to Respondent his responsibilities as conservator, including his responsibility to obtain all assets from the removed Committee and to obtain any bank statements, cancelled checks, and other financial records of the Committee for the use of the auditor-master.

By letter dated September 2, 1982, the auditor-master inquired of Respondent concerning his progress. Respondent replied by letter dated September 7, 1982, advising that he had gathered in the assets that he was able to locate. Respondent's letter, however, made no reference to any efforts to collect together the Committee's financial records for the auditor-master.

The auditor-master followed up with letters to Respondent dated December 10,

1982, January 25, 1983, March 10, 1983, and April 21, 1983. Respondent did not answer any of these letters. Respondent admitted receiving at least one of these letters, dated March 10, 1983. In addition, before the Hearing Committee, Respondent also admitted receiving the letter dated January 25, 1983, although he had previously denied in a letter to Bar Counsel that he had received the January 25 letter. The Hearing Committee found, based upon substantial evidence in the record as a whole, that in fact all four letters had been sent by the auditor-master and received by Respondent.

The auditor-master's first three letters made it abundantly clear to Respondent that he had a responsibility to provide the financial records to the auditor-master so that the auditor-master could discharge his responsibilities under the order of reference entered by the court. The last letter specifically warned Respondent that his failure to supply the requested information would result in a complaint being filed with the Board on Professional Responsibility.

On July 1, 1983, Respondent's annual report to the court was due.[4] Respondent did not file his annual report either on July 1, on August 1, or for some months thereafter, although the Register of Wills sent him a notice dated August 2, 1983, advising that the annual accounting was then due.

By letter dated August 9, 1983, the auditor-master filed a complaint with the Office of Bar Counsel, and on August 15, 1983, Bar Counsel forwarded the complaint of the auditor-master to the Respondent, requiring Respondent's reply within ten days. Respondent did not reply.

Bar Counsel sent another letter on September 15, 1983, to Respondent asking for his response and telephoned Respondent on September 22, September 23, and September 26 in an attempt to elicit a response from Respondent. None was forthcoming.

The matter was petitioned and on October 5, 1983, the Hearing Committee conducted a pre-hearing status conference in Docket No. 276–82. At that status hearing, Respondent appeared and claimed he had not seen Bar Counsel's letters until the date of the status conference (October 5) or one or two days before. The Hearing Committee found as a matter of fact, a finding that we believe to be based upon substantial evidence in the record as a whole, that Bar Counsel's two letters dated August 15 and September 15 were both sent by Bar Counsel and received by Respondent.

On October 7, 1983, two days after the pre-hearing status conference, Respondent requested from the Register of Wills an extension of time in which to file his annual report. The annual report was filed on October 18, 1983, and the auditor-master also filed his report in response to the order of reference on the same day, having obtained the necessary financial records of the removed Committee on his own.

The Hearing Committee found that the assets of the conservatorship had been adequately protected by Respondent and that his only failure was in his repeated refusals to file reports and to respond to inquiries from the auditor-master and from Bar Counsel.

## II. *Discussion.*

Based upon the record set forth above, the Hearing Committee found violations of two disciplinary rules: DR 6–101(A)(3), which prohibits an attorney from neglecting a legal matter entrusted to him; and DR 1–102(A)(5), which requires an attorney not to engage in conduct prejudicial to the administration of justice.

Before the Hearing Committee,[5] Respondent made a number of arguments that

---

4. Respondent testified at the hearing that the annual report was not due until August 1, 1983. It is not necessary to decide whether the Hearing Committee's version or the Respondent's version is correct since in any event the report was not filed until well after both of these dates.

5. Respondent has not filed any briefs before this Board.

were either self-defeating or without any basis in the record. For instance, Respondent argued that his annual report was not due until August 1 (and not July 1 as Bar Counsel charged) and that the filing deadlines in the Office of the Register of Wills are not strictly enforced, delays of up to forty-five (45) days being not uncommon. Even if we were to accept Respondent's argument concerning what he asserts is a tolerance for missed deadlines in the Register's Office, which we most certainly do not, the evidence still shows that Respondent's annual report, and even his request for an extension of time within which to file the annual report, were both filed untimely even by Respondent's dubious theory, *i.e.*, more than forty-five days after August 1.

Second, Respondent argued to the Hearing Committee that he was being singled out for prosecution by Bar Counsel. He asserted that no other Respondent had been, or would be, charged with a disciplinary violation for the acts he committed. With great respect to the learned Hearing Committee, the report filed by the Hearing Committee slightly misstates the test for proving discriminatory prosecution. The question is not whether Bar Counsel has charged other attorneys who have committed similar acts. The question is whether Respondent has laid in the record a factual basis, as set forth in *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), and its progeny, that would justify a finding that Respondent was discriminated against based upon an impermissible standard such as race, religion, or some other arbitrary classification. *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962). Our review of the record indicates that Respondent did not even attempt to lay a factual basis for such an argument, and we therefore reject it.

Finally, Respondent argues that the auditor-master had no right to require him to gather the records of the Committee for the use of the auditor-master. Respondent points out that the auditor-master himself has the power to compel the production of such records by subpoena and that therefore the attempt by the auditor-master to shift the responsibility to Respondent as conservator was contrary to the law.

Respondent's argument in this regard is laden with defects. In the first place, Respondent offers us absolutely no authority for the proposition that he advances. In the second place, the auditor-master acts as the designee of the court, particularly when he is operating under an order of reference. The auditor-master therefore is endowed with the legal powers of the Superior Court. Being so endowed, the auditor-master directed Respondent to gather the records. Third, as the Hearing Committee pointed out, Respondent was free to raise his objections and to argue against the auditor-master's instructions his legal theories in a number of different ways. However, Respondent did not make the slightest attempt to raise any such objection but simply ignored the various letters that were sent to him by both the auditor-master and Bar Counsel.

We find Respondent's conduct impermissible. As the Hearing Committee simply put it: "Responsible reaction does not include Respondent's failure to do anything."

Having put aside Respondent's unavailing legal arguments, we turn to the findings of the Hearing Committee. We have no hesitation in finding that the Hearing Committee correctly found that Respondent neglected a legal matter entrusted him, namely the conservatorship of Francis R. Jones, in violation of DR 6–101(A)(3). Substantial evidence in the record as a whole amply supports this conclusion. Specifically, the Hearing Committee's report provides a detailed and cogent discussion of the reasons why it resolved the credibility question concerning Respondent's receipt of the various notices from the auditor-master. That discussion is entirely convincing, and we pause only to note that Respondent seems to have a careless attitude towards the explanations that he gives for some of his conduct. Many of

Respondent's proffered explanations for his failure to respond to various notices strain the credulity of this Board even at the distance from which we sit from the testimony. Evidently the Hearing Committee, which heard Respondent's testimony first-hand and observed his demeanor, was similarly unconvinced by Respondent.

Similarly, there can be no doubt that Respondent engaged in conduct prejudicial to the administration of justice when he repeatedly failed to respond to Bar Counsel's written investigative inquiries. The Court has repeatedly held that such a failure amounts to conduct prejudicial to the administration of justice, and we will not countenance it here as we have not in other cases. See cases cited at page 11 above.

## SANCTIONS

The Hearing Committee carefully considered the arguments of Bar Counsel, who urged a suspension of one year and one day, and the arguments of Respondent, who urged a sanction of reprimand. The Hearing Committee, as it was bound to do, took careful account of Respondent's *pro bono* activities and "record of sustained contributions to the Bar." (Hearing Committee Report at 14.) It is also considered as a mitigating factor the bank's mistake in continuing to send the bank statements to the removed Committee instead of to Respondent.

However, weighing up the repeated violations of the Disciplinary Code together with Respondent's apparently disdainful at-

titude toward the disciplinary system, the Hearing Committee, which heard the evidence and saw Respondent's demeanor, concluded that an accumulated total suspension of three months was the appropriate sanction.[6]

Not only did Respondent engage in conduct prejudicial to the administration of justice in ignoring the various inquiries sent to him by Bar Counsel in the *Jones Conservatorship* case, but he made arguments and gave testimony at the hearing in this case that the Hearing Committee charitably characterized as "frivolous."

Turning to a comparison of the sanction recommended in this case with the sanctions imposed in other cases, we find that a three months suspension is consistent with the sanctions imposed in similar cases. This matter involves two cases of neglect, each one aggravated by an additional violation: practicing law without a license in the *Nesbitt* case; and the other aggravated by conduct prejudicial to the administration of justice in refusing to answer the auditor-master and Bar Counsel in the conservatorship case. There are mitigating factors— Respondent's *pro bono* work and Bar activities.

In other similar neglect cases three months suspensions have been imposed, *In re Alexander*, 466 A.2d 447 (D.C.1983) (Respondent neglected to appear for scheduled trial in one case and sent unprepared associate to hearing in another; three prior informal admonitions); *In re Dwyer*, [No. M–61–80] (D.C. June 9, 1981) (Respondent

---

6. The Hearing Committee decided Bar Docket No. 276–82 (*Nesbitt*) first. The Committee found a public censure to be the appropriate sanction on the neglect and practicing without a license charges. However, if the Board ruled that Bar Counsel's belatedly introduced evidence on conduct prejudicial to the administration of justice should have been admitted and the charge thereby proven, then the Hearing Committee would have recommended a combined sanction on all three violations of suspension for three months. (*See* Hearing Committee Report at 21–22.) As appears above, we believe that the evidence should not be admitted and Bar Counsel's proof on the conduct prejudicial to the administration of justice therefore fails. In Bar Docket No. 57–83 (*Jones Conservator-*

ship), decided second by the Hearing Committee, the Committee found that the violations in that case (neglect and conduct prejudicial to the administration of justice) justified a suspension of three months by themselves. Thus, the Hearing Committee reasoned, if the first case resulted in a public censure, the total sanction for both cases would be a three months suspension. On the other hand, if the first case resulted in a three month suspension, then the sanctions should aggregate to six months for both cases. (*See* Hearing Committee Report at 14.) In view of our finding that conduct prejudicial to the administration of justice has not been properly proven against Respondent in the first case, we recommend a total sanction of three months suspension for both cases.

neglected to appear three times in one case and willfully violated client's instructions in another; no prior discipline); *In re Harmon*, [No. M–79–81] (D.C. December 14, 1981) (neglect and willful failure in not filing suit and failure to honor promise to Bar Counsel; failure to respond to Bar Counsel's investigative inquiries); *In re Jamison*, 462 A.2d 440 (D.C.1983) (neglect and willful failure to file answer on time joined with late appearance in court; three prior informal admonitions); *In re Knox*, 441 A.2d 265 (D.C.1982) (neglect and willful failure leading to expiration of statute of limitations after one prior informal admonition).

In the last analysis our choice of sanctions must be made in the context of the Hearing Committee's decision that three months was the appropriate term of suspension. The Hearing Committee heard Respondent's testimony, heard his arguments, and observed his demeanor. It is certainly true that on the cold record a number of the arguments made by Respondent seem at best self-contradictory and at worst disingenuous. Evidently, the Hearing Committee was influenced by these factors in arriving at the sanction that it chose. In such a case, we think it appropriate to defer to the judgment of the Hearing Committee, and we do so in this case.

Therefore, we recommend to the court that Respondent be suspended from the practice of law for a period of three months.

BOARD ON PROFESSIONAL
RESPONSIBILITY
By: /s/ Mark W. Foster
MARK W. FOSTER, Chair

Date: October 10, 1984

All members of the Board concur in this recommendation except Mrs. King, who

1. The Hearing Committee rejected Bar Counsel's belated proffer of evidence with respect to Respondent's failure to cooperate with Bar Counsel, and suggested that if the Board agreed that the evidence was properly rejected, then the Committee would recommend a sanction of public censure, but if the Board's opinion was that the proffered evidence should have been admitted, then the Committee would recom-

has filed a dissenting opinion, and Mr. Webb who did not participate.

## BOARD OF PROFESSIONAL RESPONSIBILITY DISTRICT OF COLUMBIA COURT OF APPEALS

Bar Docket Nos. 276–82 and 57–83

IN THE MATTER OF MELVIN J. WASHINGTON, RESPONDENT.

### OPINION OF FLORENCE R. KING

I concur in the findings of the Hearing Committee and the majority opinion, but dissent on the recommended sanction of suspension for ninety days, and would prefer either a public censure or a thirty-day suspension.

In Bar Docket No. 276–82, the Hearing Committee found that Respondent was guilty of practicing law without a license in violation of DR 3–101(B), and neglect in violation of DR 6–101(A)(3), and for these violations the Hearing Committee recommended a public censure.[1]

In Bar Docket No. 57–83, the Hearing Committee found that Respondent was guilty of neglecting a legal matter entrusted to him, in violation of DR 6–101(A)(3), and conduct prejudicial to the administration of justice, in violation of DR 1–102(A)(5), and for these violations the Hearing Committee recommended a suspension of three months. (Hearing Committee "Report and Recommendation" at 14.)

The majority has adopted the findings of the Hearing Committee in both cases, as well as the recommended sanctions.

I am unable to fathom how the Hearing Committee and the majority arrive at the

mend a suspension of three months. (Hearing Committee "Report and Recommendation" at 22.) The majority concurred in the Hearing Committee's determination that the proffered evidence should not be received, and impliedly accepted the Hearing Committee's recommendation of a public censure as the appropriate sanction in this case.

conclusion that a public censure added on to a violation which standing alone would have warranted at most a public reprimand, add up to a ninety-day suspension.

Respondent's conduct which forms the basis of the violation in Bar Docket No. 57–83 consisted of his failure to respond to communications from the Auditor Master, and his failure to respond to communications from Bar Counsel, conduct, which in my opinion, does not rise to the level of a ninety-day suspension. Respondent's conduct in this case is no more egregious than respondents in comparable situations.

In *In the Matter of Brown* (D.N. 222–76—8/4/78), respondent was found to have violated DR 1–102(A)(5) and DR 6–101(A)(3) because he was held in contempt of Court by the D.C. Court of Appeals for failure to file timely briefs in four criminal cases. For this conduct respondent was publicly reprimanded.

In *In the Matter of Marshall* (D.N. 81–80), respondent, who was appointed by the Court in a child neglect case, failed to appear at three scheduled hearings despite notices from the court, and was found to have violated DR 6–101(A)(3) and DR 1–102(A)(5). For these violations respondent was publicly reprimanded.

In *In the Matter of Mailloux* (D.N. 66–79), respondent was publicly reprimanded because he failed to take any action in his client's case despite urgings of the trial judge, which resulted in a dismissal of the suit, and failed to respond to communications from his client over a considerable period of time, all in violation of DR 6–101(A)(3).

The majority tries to bolster its recommendation for a ninety-day suspension by referring to Respondent's "repeated violations of the Disciplinary Code together with Respondent's apparently disdainful attitude toward the disciplinary system." (p. 2 of the majority Opinion.) The fact is, however, that Respondent has practiced law for 16 years and has had an unblemished record until the advent of these two cases which arose from circumstances occurring at about the same period of time.

All of the cases relied upon by the majority in support of the ninety-day suspension had some aggravating factors. The cases which I think are more analogous to Respondent's conduct, taken cumulatively, are *In re Banks*, 461 A.2d 1038 (D.C.1983), and *In re Gavin*, No. M–138–82 (D.C. March 30, 1983), although the fact situations are not directly on point.

In *Banks*, respondent was found to have violated DR 6–101(A)(3) because of repeated acts of neglect in that he (1) failed to file answers to interrogatories, (2) failed to respond to a motion to compel, (3) filed inadequate answers to interrogatories, and (4) waited a month to file a motion to reinstate his clients' case after it had been dismissed. For this conduct the Board recommended, and the Court of Appeals adopted, the recommended sanction of a public censure, although respondent had had one prior informal admonition and one prior private reprimand.

In *Gavin*, respondent, having been held in contempt of Court for failure to appear in a timely manner, in violation of DR 6–101(A)(5), was publicly censured although he had four prior informal admonitions for similar conduct.

If consideration is given to Respondent's unblemished record, his pro bono work in the community, *see In re Cope*, 455 A.2d 1357 (D.C.1983), and his sustained contributions in the local bar associations, then I think the appropriate sanction should be a public censure, or at the utmost, a thirty-day suspension.

/s/ Florence R. King
FLORENCE R. KING

Date: October 10, 1984